J-A06027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.G., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.G., | |
| Appellee | No. 2743 EDA 2016 |

Appeal from the Order July 27, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2012-18650

BEFORE:  PANELLA, SHOGAN, and RANSOM, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 22, 2017**

This is an appeal in a custody case by J.G. ("Mother").  She and J.G. ("Father") had four children.[1]  Mother appealed the order denying her request to relocate with the parties' youngest child, nine-year-old A.G., to Boca Raton, Florida.  The July 27, 2016 order also denied 1) Mother's petition to modify the existing custody order, and 2) her separate petition for special relief requesting that A.G. be immediately withdrawn from his present Hebrew school and enrolled in a different one mutually agreed upon

---

[1] Of the parties' three oldest children, two daughters were ages thirty-one and twenty-four years old in 2015; the second-oldest child, who would have been twenty-nine years old, was tragically killed by a drunk driver when she was nineteen years old in 2005.  N.T., 2/17/16, at 24; Custody Evaluation by Anthony M. Pisa, Ph.D., 12/29/15, Mother's Exhibit 1 ("Pisa Report"), at 3, 13–14.

by the parties. Finally, the order denied Father's petition to modify the existing custody order in which he requested equally shared physical custody; however, the trial court granted Father's alternative request to increase his partial physical-custody time. Upon careful review, we affirm.

The record reveals that Mother and Father separated in 2012 after thirty-three years of marriage. N.T., 2/18/16, at 5. Mother testified that after the parties' daughter died in July of 2005, the parties planned to have "another child to make us feel whole again." *Id*. at 7, 11. A.G. was born seventeen months later in October of 2007. *Id*. at 5, 10. The parties separated in April of 2012, and a divorce decree was issued in December of 2014. *Id*. at 5–6.

The parties stipulated to the existing custody order dated January 13, 2014. It granted them shared legal custody, Mother primary physical custody, and Father partial physical custody every Wednesday overnight during the school year. In addition, the order granted Father physical custody on alternating weekends from "Friday after school through Sunday at 8:00 p.m. and on the next alternating weekend . . . from Friday after school through Monday morning return to school, or if there is no school, to Mother's home by 9:00 a.m." Order, 1/13/2014, at ¶ 2(b).

Father resides in the former marital home in Wynnewood, Pennsylvania, with his girlfriend, Stefanie Cutler. Pisa Report at 3. Mother resides in an apartment in Bala Cynwyd, Pennsylvania. *Id*. A.G. attends

school in the Lower Merion School District, and he has an Individualized Education Plan ("IEP") due primarily to reading difficulties. N.T., 6/14/16, at 242–243. In addition, A.G. is diagnosed with Attention Deficit Disorder ("ADD") or Attention Deficit Hyperactivity Disorder ("ADHD"). Pisa Report at 9. Father testified that A.G. was recently prescribed Ritalin, which has made him more calm and focused. N.T., 6/14/16, at 240–241.

On April 23, 2015, Mother filed a notice of proposed relocation with A.G. to Boca Raton, Florida. Father responded on April 27, 2015, with a counter-affidavit objecting to the relocation and to modification of the existing custody order. On July 6, 2015, Mother filed a petition to modify the existing custody order, wherein she requested modification of Father's partial physical custody schedule and permission to relocate with A.G. to Florida. On July 16, 2015, Father filed a petition to modify the existing custody order, wherein he requested joint physical custody.[2] Finally, on August 25, 2015, Mother filed a petition for special relief, asking that A.G. be withdrawn from Hebrew school at Temple Beth Hillel and enrolled in a new

---

[2] "Joint physical custody" is not a term included in the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321–5340, which governs this custody matter. Rather, the Act includes the term "shared physical custody," which is defined as "the right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child." 23 Pa.C.S. § 5322. During these proceedings, Father requested equally shared physical custody.

Hebrew school mutually agreed upon by the parties. Petition for Special Relief, 8/25/15, at 1–2.

The trial court held a protracted custody hearing over five days, on February 17–19, and June 14–15, 2016. Mother testified on her own behalf, and she presented the testimony of Anthony M. Pisa, Ph.D., a clinical psychologist appointed to perform a custody evaluation upon agreement of the parties; Robert Tanenbaum, a licensed psychologist; Maria Vetter, an expert in special education consultations; and Laurie Dubow, Mother's friend who owns a real estate company in Florida, who testified *via* telephone. Father testified on his own behalf, and he presented the testimony of J.S.G., the paternal grandmother; Sharon Grevet, Mother's sister, *via* telephone; and J.E.G. and F.L.G., the parties' adult daughters, *via* telephone. On rebuttal, Mother testified again on her behalf and presented the testimony of her friend, Farell Borine.

By order dated July 26, 2016, and filed on July 27, 2016, the trial court denied Mother's request to relocate with A.G. and her petition to modify the existing custody order. Further, the court denied Mother's petition for special relief, wherein she requested A.G.'s withdrawal from his current Hebrew school and enrollment in a different one. The court denied Father's request for equally shared physical custody but granted him additional physical custody overnight on the Thursday evenings preceding Mother's custodial weekends. The court directed that the "January 13, 2014

stipulated custody order shall remain in full force and effect to the extent that it does not conflict with this Order." Order, 7/26/16, at 4.

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on October 18, 2016, wherein it addressed each error asserted by Mother in her concise statement. On appeal, Mother presents the following issues for our review:

1. Whether the [c]ourt erred by failure to individually address the sixteen (16) custody factors and ten (10) relocation factors when issuing its Order?

2. Whether the [t]rial [c]ourt erred in concluding that Appellee-Father should be awarded additional physical custody?

3. Whether the [t]rial [c]ourt erred in fashioning a custody order based upon an improper conclusion that Appellee-Father spent "meaningful time together with the child on Wednesday?["]

4. Whether the [t]rial [c]ourt erred in failing to give the appropriate weight to the fact that Appellee-Father repeatedly stated that if he were permitted substantially similar time with the child he would consent to the relocation to Florida?

5. Whether the [t]rial [c]ourt erred in failing to place appropriate weight on the fact that Appellee-Father testified that he considered [Appellant-]Mother's proposal to stop support payments if she were able to relocate with the child, and that the main reason he declined was because he was concerned about what his other children might think of him?

6. Whether the [t]rial [c]ourt erred in fashioning a custody order based upon an improper conclusion that the child has a close relationship with his two adult sisters, as this conclusion is in direct contradiction to the wealth of evidence and testimony presented to the contrary?

7. Whether the [t]rial [c]ourt erred by in [sic] fashioning a custody order based upon an improper conclusion that the child had developed a close relationship with Paternal Grandparents, Aunts, Uncles, and cousins?

8. Whether the [t]rial [c]ourt erred in fashioning a custody order based upon an improper conclusion that the child would not have similar family relationships or a similar support system in Florida?

9. Whether the [t]rial [c]ourt erred in fashioning a custody order based upon an improper finding that "there was no persuasive evidence presented at the hearing that the quality of the child's education would improve, or remain consistent for that matter, if the child relocates to Florida," which is contrary to all the evidence and testimony presented, specifically the education expert presented by Appellant-Mother?

10. Whether the [t]rial [c]ourt erred in fashioning a custody order based upon an improper conclusion that there was "no persuasive evidence that the relocation would enhance the general quality of life for the child financially or emotionally?"

11. Whether the [t]rial [c]ourt erred in fashioning a custody order based upon improperly speculating that Appellant-Mother may not be willing to promote the child's relationship with Appellee-Father if the child were permitted to relocate?

12. Whether the [t]rial [c]ourt erred in applying and adopting Dr. Anthony Pisa's conclusion that if the child were to relocate to Florida, "in his opinion the child's loss from being separated from Father and Father's extended family would outweigh any benefit gained by Mother in relocating?"

13. Whether the [t]rial [c]ourt erred in failing to consider the uncontroverted and well-reasoned preference of the child, which was to be able to relocate with Appellant-Mother?

14. Whether the [t]rial [c]ourt erred in failing to adjudicate the underlying issues outlined in the Petition for Special Relief?

Mother's Brief at 3–4.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.

§§ 5321–5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (internal citation

omitted). This Court "will accept the trial court's conclusion unless it is

tantamount to legal error or unreasonable in light of the factual findings."

*M.G. v. L.D.*, ___ A.3d ___, ___, 2017 PA Super 29, *5 (Pa. Super. 2017)

(citing *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014)).

Further, we have stated the following:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the

child. "The best-interests standard, decided on a case-by-case basis,

considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)).

Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider when awarding custody. ***E.D. v. M.P.***, 33 A.3d 73, 80–81, n.2 (Pa. Super. 2011). Those factors are as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

- 8 -

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Section 5337(h) of the Act sets forth the following ten relocation factors that a trial court must consider when ruling on a relocation petition:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

>     (10) Any other factor affecting the best interest of the
>     child.

23 Pa.C.S. § 5337(h).  "As the custodial parent seeking to relocate . . . ,
Mother had the burden of establishing that relocation is in her son's best
interest."  **See** 23 Pa.C.S. § 5337(i) ("Burden of proof.—(1) The party
proposing the relocation has the burden of establishing that the relocation
will serve the best interest of the child as shown under the factors set forth
in subsection (h)."). **D.K.D. v. A.L.C.**, 141 A.3d 566, 573 (Pa. Super.
2016), *appeal denied*, ___ A.3d ___, 2016 WL 6462545 (Pa. filed November
1, 2016).  In addition, "[e]ach party has the burden of establishing the
integrity of that party's motives in either seeking the relocation or seeking to
prevent the relocation."  23 Pa.C.S. § 5337(i)(2).

Turning to the first issue on appeal, Mother asserts that the trial court
erred by failing to address individually the Section 5328(a) custody factors
and the Section 5337(h) relocation factors when issuing the subject order.
This issue is waived.  Mother fails to support her two-sentence contention,
completely lacking in specificity, with any authority.  Pa.R.A.P. 2119(b);
**Banfield v. Cortes**, 110 A.3d 155, 168 n.11 (Pa. 2015) ("Where an
appellate brief fails to provide any discussion of a claim with citation to
relevant authority or fails to develop the issue, . . . that claim is waived.  It
is not the obligation of an appellate court to formulate an appellant's
arguments for him.  **Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa.
2014)."  **See also In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011)

(stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority).

Even if not waived, we would conclude the claim is without merit. In its order, the trial court stated that it "considered the custody factors as set forth in 23 Pa.C.S. § 5328(a)(1) through (a)(16), as well as the relocation factors as set forth in 23 Pa.C.S. § 5337(h)(1) through (h)(10) and weighed these factors with the evidence presented. . . ." Order, 7/26/16, at 1. Thereafter, the court delineated the reasons for its custody and relocation decisions. *Id.* at 2-4. As such, we discern no legal error by the trial court.

Similarly, with respect to the fifth issue, we conclude that Mother's one-sentence claim is waived for her failure to provide meaningful discussion with citation to relevant legal authority. ***Banfield***, 110 A.3d at 168 n.11; ***In re W.H.***, 25 A.3d at 339 n.3. Even if not waived, we would discern no abuse of discretion. The trial court addressed the issue at length, in contrast to Mother's brevity. Further, we would adopt as dispositive of Mother's fifth issue the trial court's Rule 1925(a) opinion. Trial Court Opinion, 10/18/16, at 15–16.

In delineating the reasons for its custody and relocation decisions, the trial court set forth its factual findings and made determinations regarding credibility and weight of the evidence. Order, 7/26/16, at 2–4. In addition, in its Rule 1925(a) opinion, the trial court set forth its factual findings, which

are supported by the testimonial evidence. Trial Court Opinion, 10/18/16, at 1–4.

Importantly, the trial court found credible the testimony and opinion of the custody evaluator, Dr. Pisa, who was appointed by agreement of the parties. The court admitted into evidence Dr. Pisa's thorough and comprehensive custody evaluation report. Pisa Report, 12/29/15, at 1–75. Dr. Pisa opined, "[T]he child's 'loss' from being separated from Father and Father's extended family would outweigh any benefit gained by Mother in relocating." Order, 7/26/16, at 3. The trial court explained as follows:

> Dr. Pisa testified that . . . Mother's negative behavior towards . . . Father thwarts the child's relationship with . . . Father, and that it could have a very negative psychological impact on the child. If . . . Mother were permitted to relocate to Florida, Dr. Pisa supported the contention that . . . Mother will have even more of an opportunity to thwart . . . Father's relationship with the child.
>
> Dr. Pisa's December 29, 2015 final report . . . states that [he] does not recommend that the child relocate to Florida. Dr. Pisa states that ". . . the benefits derived by Mother as a result of the move would have to be weighed against the losses incurred by the child by being displaced from Father and Father's extended family . . . the child would continue to derive benefit from being exposed to Father particularly as he grows older . . . if the child were to stay in Philadelphia, he would have the benefit of two caring parents. . . .

Trial Court Opinion, 10/18/16, at 3–4 (citations to record omitted); **see also** N.T., 2/17/16, at 122 ("[I]t's my opinion within a reasonable degree of psychological certainty that [A.G.'s] loss about being separated from [F]ather in a way that would divorce [Father] from participation in [A.G.'s]

normal developmental experience and [F]ather's extended family are losses that . . . outweigh the benefit to [M]other if she were to move . . . .").

In this appeal, but for her second and fourteenth issues, Mother asserts that the trial court erred in denying her proposed relocation, claiming that the testimonial evidence does not support the trial court's factual findings, or the trial court improperly weighed the testimonial evidence. We have thoroughly reviewed the testimony, and we disagree.

Indeed, with respect to all of the foregoing issues wherein Mother asserts that the trial court erred in denying her proposed relocation with A.G. to Boca Raton, Florida, we conclude the testimonial evidence overwhelmingly supports the court's factual findings, and its conclusions are reasonable in light of those findings. Thus, we discern no abuse of discretion. Further, because this Court must defer to the determinations of the trial judge with respect to the weight of the evidence, Mother's issues in that regard also fail. *C.R.F.*, 45 A.3d at 441. Accordingly, we adopt as dispositive of Mother's third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth issues on appeal, the trial court's Rule 1925(a) opinion. Trial Court Opinion, 10/18/16, at 11–29.[3]

In Mother's second issue, she argues that the trial court erred in granting Father additional physical custody overnight on the Thursdays

---

[3] The parties are directed to attach a copy of the opinion in the event of further proceedings in this matter.

preceding Mother's custodial weekends. Specifically, Mother contends that the court "failed to give proper weight to the fact that Father consistently failed to exercise custodial time provided to him by the" existing custody order and failed to exercise extra custodial time Mother offered him. Mother's brief at 11. In addition, Mother avers, "Father had a history of passing off his parental duties to [her]. . . ." *Id.* at 12. We disagree.

The trial court acknowledged that "Father does not always take advantage of the time when the child is available to him." Order, 7/26/16, at 4. Further, in its Rule 1925(a) opinion, the trial court referenced Dr. Pisa's statement in his report that he "would **not** recommend consideration of an equally shared [physical custody] arrangement until Father demonstrates over time that he takes advantage of all the time the child is available to him." Trial Court Opinion, 10/18/16, at 12 (citation to record omitted) (emphasis added). In addition, the trial court found that equally shared physical custody "may be too great a change in the child's routine and schedule at this time. . . ." *Id.* at 12-13. Thus, the trial court denied Father's request for equally shared physical custody.

Nevertheless, the trial court concluded that it would be in A.G.'s best interest to modify Father's partial physical custody schedule by granting Father "two additional overnights . . . per month." Trial Court Opinion, 10/18/16, at 12. The court explained that it granted Father's alternative request for overnights on the Thursday evenings preceding Mother's

custodial weekends "based on the evidence presented that [Appellee] Father and the child share a close relationship and that [Appellee] Father is able to care for the child." *Id.* at 13. Upon thorough review of the testimonial evidence, we discern no abuse of discretion by the trial court in modifying the existing custody order by granting Father extra overnights on the Thursdays that precede Mother's custodial weekends. Therefore, Mother's second issue fails.

In her fourteenth and final issue, Mother asserts that the trial court erred in failing to adjudicate the underlying issues in her petition for special relief. Specifically, Mother claims the trial court failed to enter an order with respect to "which Synagogue the child should attend services and Hebrew School." Mother's brief at 22. Mother's issue is meritless.

Contrary to Mother's assertion, the trial court stated in its Rule 1925(a) opinion that it adjudicated the underlying issues by denying her petition for special relief. Trial Court Opinion, 10/18/16, at 17. Indeed, in her petition, Mother requested that A.G. be immediately withdrawn from Hebrew school at Temple Beth Hillel and enrolled in a new Hebrew school mutually agreed upon by the parties. By denying Mother's petition, the court declined to order that A.G. be withdrawn from his current Hebrew school. Upon careful review of the totality of the testimonial evidence in this case, we discern no abuse of discretion by the court in denying Mother's petition. Therefore, we reject Mother's final issue.

Upon review, we conclude that the trial court carefully and thoroughly considered A.G.'s best interests in its custody determinations. Because the competent evidence of record supports the trial court's findings, and the trial court's conclusions are reasonable in light of those findings, we affirm the order denying Mother's request to relocate with A.G. to Boca Raton, Florida, her petition to modify the existing custody order, and her petition for special relief. In addition, we affirm the custody order modifying Father's partial physical custody schedule granting him additional overnights on the Thursdays preceding Mother's custodial weekends.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2017

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
CIVIL ACTION - LAW

J▓▓ G▓▓▓▓▓▓▓ : NO. 12-18650

VS : SUPERIOR COURT DOCKET NO.
2743 EDA 2016

J▓▓▓ G▓▓▓▓▓▓ :

## OPINION

**COONAHAN, J.** **OCTOBER 18, 2016**

Plaintiff/Appellant ▓▓▓▓▓▓▓ (hereinafter "Plaintiff Mother") and

Defendant/Appellee ▓▓▓▓▓▓▓▓▓ ("hereinafter "Defendant Father") are the

parents of one unemancipated child, A.G. (date of birth October ▓▓

2007)(hereinafter "the child"). On February 17, 18 and 19, 2016, and June 14 and

15, 2016, the court held hearings on Defendant Father's April 27, 2015 Counter-

Affidavit Regarding Relocation, Plaintiff Mother's July 6, 2015 Petition to Modify an

Existing Custody Order, and Plaintiff Mother's August 25, 2015 Petition for Special

Relief. Plaintiff Mother was represented by Maria Testa, Esquire and Richard Bost,

Esquire, and Defendant Father was represented by Cheryl Young, Esquire,

Pursuant to a January 13, 2014 agreed custody order, the parents share legal

custody of the child, Plaintiff Mother has primary physical custody of the child, and

Defendant Father has partial physical custody of the child every other weekend and

every Wednesday overnight during the school year. The child has lived in the

Philadelphia area since his birth.



Defendant Father testified at the hearings that he has a close relationship with the child. Defendant Father testified to the daily routine which he and the child follow in regard to meals, homework, and bedtime. N.T. June 14, 2016 at 281-283, 287, 289-290. Defendant Father takes the child to Hebrew School and shares other activities with the child such as basketball, soccer, museums, water parks, and play gyms. N.T. June 14, 2016 at 294-295. Defendant Father stated that the child also has playdates with other children during Defendant Father's custodial weekends. N.T. June 14, 2016 at 298.

There was testimony presented that the child spends time with his paternal grandparents, his paternal aunt and uncle, and his cousins, at Hebrew school, and on the weekends when he is with Defendant Father, and that he has a close relationship with his extended family. N.T. June 14, 2016 at 283-284, 296, N.T. June 15, 2016 at 43-44. The child also has a close relationship with Defendant Father's fiancée, Stefanie Cutler. N.T. June 15, 2016 at 80.

Plaintiff Mother testified that she wished to relocate to Florida because she states she has a support system in Florida, she wanted to live closer to her mother, who resided in Florida, and that the weather in Florida would be better for an injury she sustained to her hand. Plaintiff Mother also testified that she would be working as a part time relator's assistant in Florida. However, since Plaintiff Mother filed her Notice of Relocation on April 23, 2015, her mother has passed away. Furthermore, her mother's residence was six hours away from where Plaintiff Mother planned to relocate in Florida. N.T. June 14, 2016 at 51, 52. There was also testimony that since her mother moved to Florida in 2012, Plaintiff Mother only visited her four times until her death in January, 2016. N.T. June 14, 2016 at 159.

2

Plaintiff Mother stated that her support system in Florida was comprised of her cousin, Randy Levine, a friend named Laurie Dubow, and the directors of a summer camp which her older children attended. However, there was testimony presented that Plaintiff Mother's relationship with her cousin and Ms. Dubow is not close, and Plaintiff Mother's contact with the operators of the summer camp, "Isaac and Rose" was limited to once a year prior to the custody litigation. N.T. February 19, 2016 at 71; N.T. June 14, 2016 at 63, 87, 88, 186, 218, 235.

Plaintiff Mother testified that she intended to work as a real estate agent's assistant in Florida with the intention of becoming a part-time real estate agent. However, Plaintiff Mother does not have either a Pennsylvania or Florida real estate license. N.T. June 14, 2016 at 115. Plaintiff Mother offered no persuasive evidence that she sought a similar position in Pennsylvania, or that she attempted to find any job in Pennsylvania for that matter. N.T. June 14, 2016 64-66, 115, 124.

Plaintiff Mother did not present any persuasive evidence to the court that her hand injury prohibits her from remaining in Pennsylvania or that Florida would somehow alleviate her injury. There was testimony presented that despite her injury, Plaintiff Mother has still been able to enjoy her hobbies such as painting, and playing the flute on a consistent basis. Plaintiff mother testified that she wants to move to Florida in order to have a "fresh start" and also to get away from Defendant Father and his family. N.T. June 14, 2016 at 77.

At the February 17, 2016 hearing, Dr. Anthony Pisa testified that he conducted a custody evaluation in connection with this case which was completed at the end of December, 2015. Dr. Pisa testified that Plaintiff Mother's negative behavior towards Defendant Father thwarts the child's relationship with Defendant Father, and that it

3

could have a very negative psychological impact on the child. N.T. February 17, 2016 at 150-152. If Plaintiff Mother were permitted to relocate to Florida, Dr. Pisa supported the contention that Plaintiff Mother will have even more of an opportunity to thwart Defendant Father's relationship with the child. N.T. February 17, 2016 at 177.

Dr. Pisa's December 29, 2015 final report, marked and entered as trial exhibit M-1, states that Dr. Pisa does not recommend that the child relocate to Florida. Dr. Pisa states that "...[t]he benefits derived by Mother as a result of the move would have to be weighed against the losses incurred by [the child] by being displaced from Father and Father's extended family...[the child] would continue to derive benefit from being exposed to Father particularly as he grows older...if [the child] were to stay in Philadelphia, he would have the benefit of two caring parents..." December 29, 2015 final report at 74; N.T. February 17, 2016 at 112.

On July 26, 2016, the court issued an order as follows:[1]

> "AND NOW, this 26th day of July, 2016, upon consideration of Defendant's April 27, 2015 Counter-Affidavit Regarding Relocation, Plaintiff's July 6, 2015 Petition to Modify an Existing Custody Order, Defendant's July 16, 2015 Petition to Modify Custody, and Plaintiff's August 25, 2015 Petition for Special Relief, following hearings on February 17, 18 and 19, 2016 and June 14 and 15, 2016, and upon consideration of Defendant's July 15, 2016 Proposed Findings of Fact and Conclusions of Law, and Plaintiff's July 15, 2016 Proposed Findings of Fact and Conclusions of Law, the Court makes the following findings:
>
> The parties are the parents of one minor child, [A.G.] (DOB10/⬤/07). On January 13, 2014, Plaintiff/Mother (hereinafter "Mother") and Defendant/Father ("Father") entered into a stipulated custody order which provided for, inter alia, Mother and Father to share legal custody of the child, Mother to have primary physical custody of the child, and Father to have partial physical custody of the child every Wednesday overnight, as well as every other weekend.

---

[1] The July 26, 2016 order was docketed with the Montgomery County Prothonotary on July 27, 2016.

The Court has considered the custody factors at set forth in 23 Pa.C.S.A. § 5328(a)(1) through (a)(16), as well as the relocation factors as set forth in 23 Pa.C.S.A. § 5337(h)(1) through (h)(10) and weighed these factors with the evidence presented at the hearings as follows:

**Relocation:**
The Court has considered the best interests of the child by considering the child's current schedule and the importance of both parents maintaining an active role in the growth and development of the child. Based on the evidence presented at the hearings, the Court finds that a relocation to Florida would not be in the child's best interests.

The child has lived in Pennsylvania since his birth. The child has developed relationships with extended family in the Philadelphia area, which includes his paternal grandparents, aunts, uncles and cousins. He also has a close relationship with his two adult sisters. The child does not have similar family relationships or a similar support system in Florida.

Under the current custody schedule, Father has partial physical custody of the child every Wednesday overnight. There was testimony that Father spends meaningful time together with the child on Wednesday school days. Father helps the child get ready for school in the morning, takes him to school, and in the evening Father helps him with his homework and to get ready for bed. On Wednesday afternoons Father picks the child up from school and takes him to Hebrew School. The Court found that a relocation of the child to Florida would be detrimental to Father's ability to exercise his periods of partial physical custody since the child would be attending school in Florida, thereby making Father's overnight custody on Wednesdays impossible. Mother has proposed that in exchange for Father losing his weekday custodial time, Father would have longer periods of time with the child in the summer, and she believes a schedule could be created which would give Father a "substantially" similar amount of time with the child as he now has. The Court does not find that this is a viable alternative to the custodial time which the child currently has with Father, nor would Father be able to spend a "substantially" similar amount of time with the child if the child relocates to Florida.

Under the current custody order, Father is able to attend the child's medical appointments, school conferences, extracurricular activities, and religious events if he so chooses. If the child relocated to Florida, Father's ability to participate in these aspects of the child's upbringing would be severely compromised.

There was no persuasive evidence presented at the hearings that the quality of the child's education would improve, or remain consistent for that matter, if the child relocates to

5

Florida. The child has special educational needs which are being met in Pennsylvania. The child currently attends Lower Merion School District. Furthermore, Father testified that he has to a limited extent researched private schools in this area which could also meet the child's educational needs.

There was also no persuasive evidence that the relocation would enhance the general quality of life for the child financially or emotionally.

Based on the testimony presented at the hearings, the Court also has concerns as to Mother's willingness and ability to promote the child's relationship with Father if Mother and the child relocate to Florida.

Mother testified that one of the reasons she wishes to relocate to Florida is because Father and his family have "shunned" her from the synagogue, Temple Beth Hillel-Beth El. The Court does not find that Mother presented persuasive evidence to support this claim. Furthermore, the Court does not find that this is a valid reason for relocation to another state even if Mother's allegations are in fact true.

Mother's claim that her employment opportunity in Florida supports a relocation of the child is not persuasive. The job Mother would have in Florida is a part time position with a realtor's office, however, Mother does not have a realtor's license in either Florida or Pennsylvania. Mother did not present any persuasive evidence that she has attempted to find employment in Pennsylvania. Mother did not prove to the Court that her sole, viable employment opportunity is in Florida and that, therefore, relocation would be in the child's best interests.

The Court has taken into consideration the testimony of Dr. Anthony Pisa, who was appointed on July 20, 2015 by agreement of the parties as the custody evaluator in this matter. Dr. Pisa testified that if the child were to relocate to Florida, in his opinion the child's "loss" from being separated from Father and Father's extended family would outweigh any benefit gained by Mother in relocating.

**Custody:**

The Court finds that the child has been doing well under the current custody schedule. The Court finds that the child's need for stability and continuity would best be met by the current custody order remaining in effect. Father did not prove by a preponderance of the evidence that a modification to a shared physical custody schedule would be in the child's best interests. Father did not prove that Mother is unable to care for the child or is unable to provide for his needs in a manner which would support reducing Mother's periods of physical custody. In fact,

6

there was testimony presented that Mother is a "very strong parent".

Mother has provided the majority of the parental duties for the child. There was testimony that Father sometimes abdicates his parental responsibilities and duties to Mother. Mother presented evidence to the Court that, on occasion, Father does not always take advantage of the time when the child is available to him.

Based on the testimony at the hearing, the Court finds that neither parent has any current issues with drug or alcohol abuse which would affect his/her ability to care for the child.

There was no persuasive testimony as to any present or past physical abuse by either parent or a member of either parent's household towards the child.

Based on the testimony at the hearing, the Court finds that neither parent nor any member of either parent's household has a mental or physical condition which would affect his/her ability to care for the child.

The Court has also considered the testimony of Dr. Pisa, who stated that in his opinion, Mother should retain primary physical custody of the child.

The Court hereby ORDERS and DECREES as follows:

Mother's request for relocation is DENIED.

Father's request for shared physical custody of the child is DENIED. Father's request to have physical custody of the child Thursday overnight preceding Mother's custodial weekends is GRANTED. Father shall have custody of the child every Thursday preceding Mother's custodial weekend from after school on Thursday until Friday morning drop off at school, or 9:00 a.m. if school is not in session.

The January 13, 2014 stipulated custody order shall remain in full force and effect to the extent that it does not conflict with this Order.

Mother's August 25, 2015 Petition for Special Relief is DENIED.

NOTICE TO THE PARTIES – RELOCATION BY EITHER PARENT Pursuant to 23 Pa. C.S.A. 5323(c), any custody order shall include notice of a party's obligations under 23 Pa.C.S.A. §5337 relating to relocation. These obligations are contained in 23 Pa.C.S.A. §5337(b)(General rule),and (c)(Notice)."

7

On August 23, 2016, Plaintiff Mother filed a Notice of Appeal to the Superior Court of Pennsylvania of the July 26, 2016 order, a Notice Pursuant to Pa.R.A.P. 904(f) that the matter is a children's fast track appeal, and her Concise Statement of Matters Complained of on Appeal which states as follows[2]:

a.    "The Court erred by failing to individually address the sixteen (16) custody factors and ten (10) relocation factors when issuing its Order. The Court failed to show that the Court weighed all the custody factors when drawing its conclusion in this case."

b.    "The Court erred in concluding that Respondent should be awarded additional physical custody."

c.    "The Court erred in fashioning a custody order based upon an improper conclusion that Respondent spent 'meaningful time together with the child on Wednesday'."

d.    "The Court erred in fashioning the custody order by not giving appropriate weight to the fact that Respondent repeatedly stated that if he were permitted substantially similar time with the child he would consent to the relocation to Florida."

e.    "The Court erred by not placing appropriate weight to the fact that Respondent testified that he considered Petitioner's proposal to stop support payments if she were able to relocate with the child, and that the main reason he declined was because he was concerned about what his other children might think of him ."

f.    "The Court erred by failing to adjudicate the underlying issues outlined in the petition for Special Relief"

g.    "The Court erred in fashioning a custody order based upon an improper conclusion that the child has a close relationship with his two adult sisters, as this conclusion is in direct contradiction to the wealth of evidence and testimony presented to the contrary."

h.    "The Court erred in fashioning a custody order based upon an improper conclusion that the child had developed a close relationship with Paternal Grandparents, Aunts, Uncles and cousins."

i.    "The Court erred in fashioning a custody order based upon an improper conclusion that the child would not have similar family relationships or a similar support system in Florida"

j.    "The Court erred in fashioning a custody order based upon an improper finding that 'there was no persuasive evidence presented at the hearings that the quality of the child's education would improve, or remain consistent for that matter, if the child relocates to Florida' was contrary to all the evidence and testimony presented, specifically the education expert presented by Petitioner."

k.    "The Court erred in fashioning a custody order based upon an improper conclusion that there was 'no persuasive evidence that the relocation would enhance the general quality of life for the child financially or emotionally'."

---

[2] Plaintiff Mother included argument under each issue listed in her concise statement. Pa.R.C.P. 1925(b)(4)(iv) states in part: "The Statement should not be redundant or provide lengthy explanations as to any error." Therefore, the court's opinion states only Plaintiff Mother's specific matters complained of on appeal, and has not restated her arguments herein.

8

l.      The Court erred in fashioning a custody order based upon improperly speculating that Petitioner may not be willing to promote the child's relationship with Respondent if the child were permitted to relocate."

m.      "The Court erred in applying and adopting Dr. Pisa's conclusions that if the child were to relocate to Florida, 'in his opinion the child's loss from being separated from Father and Father's extended family would outweigh any benefit gained by Mother in relocating'."

n.      "The Court failed to consider the uncontroverted and well-reasoned preference of the child, which was to be able to relocate with Petitioner."

This opinion is filed pursuant to and is in compliance with Pa. R.A.P. 1925 (a).

The standard of review of a custody order is very narrow; the appellate court is limited to determining whether the trial court committed a gross abuse of discretion. See Yates v. Yates, 963 A.2d 535 (Pa. Super. 2008). When reviewing an appeal from a custody order, the appellate court should not substitute its judgment for that of the trial court; the appellate court merely decides if the conclusions of the trial court involve an error of law or are unreasonable in light of its factual findings. Hanson v. Hanson, 878 A.2d 127, 129 (Pa. Super. 2005). Only where the appellate court finds that a child custody order is manifestly unreasonable as shown by the evidence of record will it interfere with the trial court's determination. K.B. II v. C.B.F., 2003 PA Super 364, 833 A.2d 767 (2003).

23 Pa.C.S.A. § 5337(h) lists the factors which the court shall consider in determining whether to grant a proposed relocation as follows:

"Relocation factors.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

9

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

In all cases where one parent seeks to relocate and the other parent opposes the move, the burden is on the relocating parent to establish a significant improvement in the quality of life for that parent and child. Tripathi v. Tripathi, 2001 PA Super 322, 787 A.2d 436. A "sensitive case-by-case balancing" is required to ensure that all interests are treated as equitably as possible. Boyer v. Schake, 2002 PA Super 148, 799 A.2d 124 (2002). The trial court should seek to sacrifice the noncustodial parent's interests as little as possible "in the face of the competing and often compelling interest" of a custodial parent who seeks a better life in another geographical location. Johns v. Cioci, 2004 PA Super 492, 865 A.2d 931 (2004).

The trial court addresses Plaintiff Mother's claims as follows;

10

a.     "The Court erred by failing to individually address the sixteen (16) custody factors and ten (10) relocation factors when issuing its order. The Court failed to show that the Court weighed all the custody factors when drawing its conclusion in this case."

23 Pa.C.S.A. §5328 lists the factors which the court must consider when reaching a decision for an award of custody. 23 Pa.C.S.A. §5323(d) states as follows:

"Reasons for Award - The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order."

Nothing in 23 Pa.C.S.A. 5321 et seq requires the court to "individually address" the sixteen custody factors, or the ten relocation factors when fashioning an order on custody or relocation. The court is simply required to consider the factors along with the evidence as presented, and to delineate its reasons for a custody determination in open court on the record or in writing. In this case, the court did so, stating precisely what its reasons were for not only the custody decision, but the relocation decision, in the July 26, 2016 order. The Child Custody Act does not require a specific amount of detail for the trial court's explanation of its decision; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. M.J.M. v. M.L.G., 63 A.3d 331, 2013 PA Super 40. Therefore, Plaintiff Mother's claim in paragraph a. of her concise statement is without merit and contrary to the facts of the case, and should be dismissed.

b.     "The Court erred in concluding that Respondent should be awarded additional physical custody."

Pursuant to a January 13, 2014 agreed custody order, the parents share legal custody of the child, Plaintiff Mother has primary physical custody of the child, and Defendant Father has partial physical custody of the child every other weekend and

11

every Wednesday overnight during the school year. As part of the custody litigation in this matter, Plaintiff Mother filed a petition to modify the existing custody order. At the hearings, and in his post trial brief to the court, Defendant Father requested equally shared physical custody of the child. In his final report, Dr. Pisa states: "the examiner would not recommend consideration of an equally shared arrangement until Father demonstrates over time that he takes advantage of all the time [the child] is available to him." December 29, 2015 final report at 74.

After weighing the evidence presented at the hearings with the custody factors pursuant to 23 Pa.C.S.A. §5328, the court did not find that an award of shared 50/50 custody would be in the child's best interests at this time. However, the court did find that it would be in the best interests of the child to award Defendant Father additional custodial time with the child.

As stated in the court's July 26, 2016 order, Defendant Father did not prove by a preponderance of the evidence that a modification to a shared physical custody schedule would be in the child's best interests. There was testimony that the child is doing well under Plaintiff Mother's primary physical custody, and that Plaintiff Mother is a "very strong parent". However, Defendant father requested at the hearings that he have physical custody of the child every Thursday preceding Plaintiff Mother's custodial weekend from after school until Friday drop off at school. This modification provides Defendant Father with two additional overnights with the child per month. The court did find that Defendant Father is able to care for the child and meet his daily needs, that he has a close, loving relationship with the child, and he is able to provide adequate child care for the child when necessary. Therefore, although a modification to a shared physical custody schedule may be

12

too great a change in the child's routine and schedule at this time, awarding Defendant Father two additional overnight periods of custody per month is not an abuse of the court's discretion based on the evidence presented that Defendant Father and the child share a close relationship and that Defendant Father is able to care for the child.

Therefore, Plaintiff Mother's claim in paragraph b. of her concise statement is without merit and contrary to the facts of the case, and should be dismissed.

    c.    "The Court erred in fashioning a custody order based upon an improper conclusion that Respondent spent 'meaningful time together with the child on Wednesday'."

The evidence presented at the hearings proved that Defendant Father and the child follow a routine on Wednesdays that provides the child with meaningful contact with Defendant Father. On Wednesday afternoons after school, Defendant Father takes the child to Hebrew School. The child's paternal grandmother is present at the Hebrew School, and she and the child get to spend time talking and sharing a snack together. N.T. June 14, 2016 at 284-285. After Hebrew School, the child returns to Defendant Father's home, where he has dinner with Defendant Father and Defendant Father's fiancée, Ms. Cutler. After dinner, Defendant Father helps the child with his homework, and they also spend time together playing or talking before the child goes to bed. N.T. June 14, 2016 at 287-291.

Based on the testimony presented, Plaintiff Mother's allegation that the court reached an improper conclusion that Defendant Father and the child spend meaningful time together on Wednesday is therefore contrary to the evidence and without merit, and should be dismissed.

    d.    "The Court erred in fashioning the custody order by not giving appropriate weight to the fact that Respondent repeatedly stated that if he were permitted

13

substantially similar time with the child he would consent to the relocation to Florida."

The record from the hearings in this matter does not support Plaintiff Mother's allegation that Defendant Father "repeatedly stated that if he were permitted substantially similar time with the child he would consent to the relocation to Florida". Defendant Father testified at the June 15, 2016 hearing: "I can't imagine [the child] living anywhere other than very, very, close to me..." N.T. June 15, 2016 at 85. When asked by his counsel if he would be willing to accept Plaintiff Mother's custodial plan wherein Defendant Father would receive "the same number of days" with the child if the child were to relocate to Florida, Defendant Father stated: "I don't like the plan whatsoever. The same number of days, you can't compare the quality and consistency of the closeness of having [the child] nearby with being, with having to hop on an airplane, stay in a hotel room...it would not be the same." N.T. June 15, 2016 at 86. Defendant Father testified that he opposed the proposed relocation to Florida because "..I love [the child] very, very, much. I can't really imagine my life without him and without watching him on a weekly basis and being very much involved in his life..." N.T. June 15, 2016 at 83.

When asked on cross examination by Plaintiff Mother's counsel if he would be willing to withdraw his request for 50-50 custody if Plaintiff Mother was to withdraw her request to relocate, Defendant Father said no. N.T. June 15, 2016 at 90. Trial Exhibit M-12 is a January 19, 2015 email wherein Defendant Father states to Plaintiff Mother: "Unless you can figure a way for [the child] to be with me overnight 9/28ths of the time, 32 percent, as he is now, forget it." Trial Exhibit M-12. When asked by Plaintiff Mother's counsel: "so if Ms. G████████ can figure out a

14

way or a proposal for [the child] to be with you 32 percent of the time, are you still agreeable", Defendant Father replied "no." N.T. June 15, 2016 at 91. At no time during his direct examination, or his cross examination, did Defendant Father repeatedly state that he would be willing to accept "substantially similar" time with the child if the child were to relocate to Florida.

Plaintiff Mother's allegation in paragraph d. of her concise statement that Defendant Father "repeatedly stated that if he were permitted substantially similar time with the child he would consent to the relocation to Florida" is contrary to the evidence presented at the hearings, is without merit, and should be dismissed.

> e. "The Court erred by not placing appropriate weight on the fact that Respondent testified that he considered Petitioner's proposal to stop support payments if she were able to relocate with the child, and that the main reason he declined was because he was concerned about what his other children might think of him ."

As stated previously in this opinion when addressing paragraph d. of Plaintiff Mother's concise statement, Defendant Father testified that he he opposed the relocation of the child to Florida because he did not want to lose "the quality and consistency of the closeness of having [the child] nearby." The weight of the evidence at the hearings proved by a preponderance of the evidence that Defendant Father has a close, loving relationship with the child, and he does not want to be geographically separated from the child at a distance of over nine hundred miles.

Trial Exhibit F-22 is a January 17, 2016 email from Defendant Father to Plaintiff Mother wherein Defendant Father states in part: "I reread the attached schedule and gave some additional thought to your offer...unfortunately I can't even get very far into the idea...and I get too emotional about the fact I wouldn't be as much in

15

[the child's] life." Defendant Father testified that this email related to Plaintiff Mother's proposal that in exchange for her relocating to Florida with the child, Defendant Father would no longer have to pay her alimony. N.T. June 15, 2016 at 154. However, when asked by his counsel if he considered this proposal, Defendant Father testified: "...I didn't consider it very long, and it was a clear no." N.T. June 15, 2016 at 154.

Although Plaintiff Mother does not refer to any specific portion of the record to support her contention that Defendant Father "testified that he considered Petitioner's proposal to stop support payments if she were able to relocate with the child, and that the main reason he declined was because he was concerned about what his other children might think of him", on cross examination, Plaintiff Mother's counsel stated when referring to trial exhibit F-22: "you considered the relocation, and you told her what would the girls think of me. That was your issue right?" Defendant Father simply replied: "It was an issue."

Contrary to Plaintiff Mother's position, in reaching a decision in this matter, the court did place the appropriate amount of weight on this issue. Defendant Father's one time consideration of a proposal of Plaintiff Mother's to eliminate support payments in exchange for relocation, a proposal which Defendant Father testified he "...didn't consider it very long, and it was a clear no", does not rise to the level to which the court could conclude that Defendant Father's motivations for opposing relocation are disingenuous. Consequently, Plaintiff Mother's allegation in paragraph e. of her concise statement is without merit, and should be dismissed.

f. "The Court erred by failing to adjudicate the underlying issues outlined in the petition for Special Relief"

16

Plaintiff Mother's August 25, 2015 Petition for Special Relief requested that the court issue an order withdrawing the child from his current Hebrew school, and enrolling him in a new Hebrew school which would be mutually agreed upon by both parents. The court's July 26, 2016 Order states on page 5 that Plaintiff Mother's August 25, 2015 Petition for Special Relief is denied. Therefore, it is unclear how the court failed to "adjudicate" the petition for special relief. Consequently, Plaintiff Mother's allegation in paragraph f. of her concise statement is without merit, and should be dismissed.

> g. "The Court erred in fashioning a custody order based upon an improper conclusion that the child has a close relationship with his two adult sisters, as this conclusion is in direct contradiction to the wealth of evidence and testimony presented to the contrary."

The child in this matter has two living adult sisters, F██████ G████████, and J████ G████████.[3] J████ G████████ testified that her relationship with the child "has always been very close". N.T. June 14, 2016 at 176. She stated that she worked for several summers as his nanny, and after she graduated from college, she worked for a year at his preschool, where she saw him every day. N.T. June 14, 2016 at 176. J████ G████████ testified: "My relationship with [the child] is everything to me, and it is the only reason that I'm [testifying] right now, because this is extremely distressing to me." N.T. June 14, 2016 at 180. J████ G████████ testified that if the child were to relocate to Florida, she would not be able to see the child as often as she does now.

F██████ G████████ testified that she also has a good relationship with the child. She stated that: "I'm his sister, but because I'm much older, I feel like I'm also a

---

[3] The child has a third sister, D███ G████████, who died in an automobile accident in 2005 at the age of nineteen.

17

guardian of his...I was home quite a bit. I go home every five to six weeks. I see him each time." N.T. June 14, 2016 at 207. She also testified that if the child were to relocate to Florida, she would be "definitely" worried about her relationship with him because she was only able to manage seeing her grandmother who lived in Florida once a year, "...and I expect that if my brother moves to Florida, it would be a similar situation." N.T. June 14, 2016 at 217-218. The weight of the evidence indicates that the court did not reach an "improper conclusion" in finding that the child's sisters have a close and loving relationship with him.

During cross-examination, Plaintiff Mother's counsel attempted to diminish the child's relationship with his two sisters by focusing on the amount of time they spend with the child rather than the quality of the relationships. The court did not conclude that the amount of time which siblings spend together outweighs the quality and nature of the relationship as well as the feelings of affection which siblings may have for one another.

The testimony in this matter clearly indicates that the child's sisters have a great deal of affection for him, and their relationship with him would be compromised if he were to relocate to Florida. Consequently, Plaintiff Mother's allegation in paragraph f. of her concise statement is without merit, contrary to the evidence, and should be dismissed.

> h.     "The Court erred in fashioning a custody order based upon an improper
>     conclusion that the child had developed a close relationship with Paternal
>     Grandparents, Aunts, Uncles and cousins."

The child's paternal grandparents, paternal aunt and uncle, and paternal cousins all live in the Philadelphia area. The child's paternal grandmother, J█████ G████, testified that she has a "warm and loving" relationship with the child.

18

N.T. June 14, 2016 at 120. She testified that she spends summers at the New Jersey shore with him, that she sees him every Wednesday at Hebrew school, and on Sundays the family gets together for a meal. N.T. June 14, 2016 at 125-126.

Defendant Father testified that the child has an "excellent" relationship with his paternal grandparents, and a "great" relationship with his paternal aunt and uncle, who "are included in every family dinner." N.T. June 15, 2016 at 44. The child knows his paternal aunt and uncle "very well", and he has socialized and been on vacation with them many times. The child also has a "great" relationship with his cousins, whom he sees "all the time." N.T. June 15, 2016 at 44.

The court's conclusion that the child has a close relationship with his paternal relatives in the Philadelphia area was not improper. The testimony in this matter clearly indicates that the child's relationship with his paternal relatives would be compromised if he were to relocate to Florida since his time with them would be limited, if not effectively eliminated. Consequently, Plaintiff Mother's allegation in paragraph g. of her concise statement is without merit, contrary to the evidence, and should be dismissed.

    i.    "The Court erred in fashioning a custody order based upon an improper conclusion that the child would not have similar family relationships or a similar support system in Florida"

Plaintiff Mother testified that despite living in Pennsylvania all her life, she has a "support system" in Florida. N.T. June 14, 2016 at 88. However, Plaintiff Mother's family currently living in Florida consists of two people; her sister, whom she testified she is estranged from ("we always have been"), and a cousin, Randy Levine. N.T. June 14, 2016 at 89. The parties' daughters testified that they had never heard of Mr. Levine prior to the custody litigation, and Plaintiff Mother

19

testified that her daughters do not know Randy Levine and that they don't have a relationship with him. N.T. February 19, 2016 at 71; N.T. June 14, 2016 at 63 186.

Based on the evidence presented at the hearings, the court cannot conclude that Plaintiff Mother's family members in Florida would provide "similar family relationships" for the child comparable to those he has with Defendant Father's family. Plaintiff Mother herself testified that when it comes to her extended family, she is "pretty much alone". N.T. June 14, 2016 at 89. Therefore the court did not err or improperly conclude that the child would not have similar family relationships in Florida to those which he currently has in Pennsylvania.

Plaintiff Mother's remaining support system in Florida would consist of four individuals. The first is Mr. Farrell Borine, who testified that he is "best friends, good friends" with Plaintiff Mother, and that "at times" their five year relationship was "romantic". At the time of the hearings, Mr. Borine was planning on moving to Florida in early August, 2016. Laurie Dubow, a friend of Plaintiff Mother's with whom she had lost touch for twenty five years, is the second individual. The final individuals are "Isaac and Rose", operators of a summer camp in Florida where the parties' daughters attended when they were children. The testimony presented at the hearings does not prove that these individuals would provide a similar support system for the child in Florida to the one which he has in Pennsylvania. There was no persuasive evidence to show that any of these individuals, other than Mr. Borine, has a close relationship with the child, or that they have been active participants in the child's upbringing.

For the above stated reasons, the court did not err in concluding that the child would not have similar family relationships or a similar support system in Florida as

20

he has in Pennsylvania. Consequently, Plaintiff Mother's allegation in paragraph h. of her concise statement is without merit, contrary to the evidence, and should be dismissed.

> j.　"The Court erred in fashioning a custody order based upon an improper finding that 'there was no persuasive evidence presented at the hearings that the quality of the child's education would improve, or remain consistent for that matter, if the child relocates to Florida' was contrary to all the evidence and testimony presented, specifically the education expert presented by Petitioner."

There was testimony presented that the child currently attends school in the Lower Merion School District. There was also testimony that the child is receiving an individualized educational plan (IEP) through the school district to address his language based learning differences. N.T. June 14, 2016 at 244-245. Defendant Father testified that he is happy with the Lower Merion School District, but that he also feels that the child would do better in a private school setting. N.T. June 14, 2016 at 246. Defendant Father testified that he has researched the possibility of the child attending private school, specifically Perelman Jewish Day School in Wynnewood, Pennsylvania, and AIM Academy in Conshohocken, Pennsylvania.

At the February 18, 2016 hearing, Plaintiff Mother called Maria Vetter, an educational consultant, as a witness. Ms. Vetter testified that in her opinion, Lower Merion School District was not addressing all of the child's behavioral needs. However, Ms. Vetter testified that she did not review the child's current IEP from Lower Merion School District because it was not provided to her, and that her opinion as to the child's current behavioral issues was based on "communications [Plaintiff Mother] had sent me." N.T. February 18, 2016 at 171-172, 184-186. She also did not meet with any of the child's teachers, nor did she meet with the child. N.T. February 18, 2016 at 186. When asked by Plaintiff Mother's counsel if it would

21

be detrimental or beneficial to move the child to a different school district, Ms. Vetter stated that it would "depend on the child". N.T. February 18, 2016 at 184.

Ms. Vetter did not offer an opinion as to whether the school system in Boca Raton would specifically be able to meet the child's academic and behavioral needs to a degree which surpasses the Lower Merion School District. In fact, she testified that she "researched" the Palm Beach School District, and "talked to" the Donna Klein Jewish Academy in Florida, however she did not provide any testimony as to whether either that specific school district, or that specific school, would be a good academic fit for the child, and would better be able to meet his learning and behavioral issues. N.T. February 18, 2016 at 188. Ms. Vetter also testified that she is not familiar with Florida schools. N.T. February 18, 2016 at 188. Ms. Vetter agreed with Defendant Father's counsel that there are appropriate schools for the child in Pennsylvania, however, she did not research them as part of her consultant services in this case since she was not asked to do so by Plaintiff Mother.

Plaintiff Mother's claim is without merit and that all the evidence presented at the hearings, specifically, the education expert's testimony, proves that the court erred in finding that "there was no persuasive evidence presented at the hearings that the quality of the child's education would improve, or remain consistent for that matter, if the child relocates to Florida" Ms. Vetter's opinion was based on incomplete data; she did not review the child's current IEP, nor did she interview the child or the child's teachers. At most, based on the information provided to her by Plaintiff Mother, she offered the opinion that the Lower Merion School District is not meeting the child's behavioral needs. She did not, however, testify that any

22

school in Florida would be better for the child, nor did she discount the possibility, as raised by Defendant Father, that a private school in Pennsylvania would be able to meet the child's academic and behavioral needs. Consequently, Plaintiff Mother's allegation in paragraph j. of her concise statement is without merit, contrary to the evidence, and should be dismissed.

> k. "The Court erred in fashioning a custody order based upon an improper conclusion that there was 'no persuasive evidence that the relocation would enhance the general quality of life for the child financially or emotionally'."

Plaintiff Mother offered no persuasive evidence or opinion testimony that relocation to Florida would emotionally benefit the child. Dr. Pisa testified that Plaintiff Mother's negative behavior towards Defendant Father thwarts the child's relationship with Defendant Father and that it could have a very negative psychological impact on the child. N.T. February 17, 2016 at 150-152. If Plaintiff Mother were permitted to relocate to Florida, Dr. Pisa supported the contention that Plaintiff Mother could have even more of an opportunity to thwart Defendant Father's relationship with the child. N.T. February 17, 2016 at 177.

Dr. Pisa's December 29, 2015 final report, marked and entered as trial exhibit M-1, states that Dr. Pisa does not recommend that the child relocate to Florida. Dr. Pisa states that "...[t]he benefits derived by Mother as a result of the move would have to be weighed against the losses incurred by [the child] by being displaced from Father and Father's extended family...[the child] would continue to derive benefit from being exposed to Father particularly as he grows older...if [the child] were to stay in Philadelphia, he would have the benefit of two caring parents..." December 29, 2015 final report at 74; N.T. February 17, 2016 at 112.

23

In her July 15, 2016 post trial proposed findings of fact and conclusions of law, when addressing the emotional benefits for the child if he were to relocate to Florida, Plaintiff Mother states that the move would "allow [the child] easy access to the beach and ocean, which is his 'happy place'." Plaintiff Mother also states that living in Florida would provide the opportunity for the child to play outdoors "the majority of the year", that there are "many kids" in Plaintiff Mother's proposed neighborhood for the child to play with, and that relocation "will also preserve the child's close relationship with Mother" and Mr. Borine. July 15, 2016 Proposed Findings of Fact and Conclusions of Law, page 15-16.

The court did not find that Plaintiff Mother's reasoning as to the alleged emotional benefits to the child as stated above override Dr. Pisa's opinion that the child needs to have the constant benefit and guidance of both parents, which will not be possible if the child relocates over nine hundred miles away. In fact, Dr. Pisa testified that Plaintiff Mother's negative behavior towards Defendant Father may thwart the child's relationship with Defendant Father. If permitted to relocate to Florida, Plaintiff Mother will have even more of an opportunity to thwart Defendant Father's relationship with the child, which is not emotionally healthy for the child. It is telling that Plaintiff Mother feels she must relocate to Florida in order to "preserve" her relationship with the child. From this statement, it would appear that Plaintiff Mother's agenda is to diminish Defendant Father's relationship with the child, and his role in the child's upbringing, while promoting her own role.

Plaintiff Mother's testimony as to any financial benefit to be gained for the child by relocation was not persuasive. Plaintiff Mother testified that she intended to work as a real estate agent's assistant in Florida with the intention of becoming a

24

part-time real estate agent. However, Plaintiff Mother does not have either a Pennsylvania or Florida real estate license. N.T. June 14, 2016 at 115. Furthermore, Plaintiff Mother offered no persuasive evidence that she sought a similar position in Pennsylvania or that attempted to find any job in Pennsylvania which may provide a similar financial benefit. N.T. June 14, 2016 64-66, 115, 124. In all relocation cases, the burden is on the relocating parent to establish a significant improvement in the quality of life for that parent and child. Tripathi, 2001 PA Super 322. In this case, Plaintiff Mother did not prove there would be any significant improvement either emotionally or financially for the child in Florida.

For the above stated reasons, Plaintiff Mother's allegation in paragraph k. of her concise statement is without merit, contrary to the evidence, and should be dismissed.

l.      The Court erred in fashioning a custody order based upon improperly speculating that Petitioner may not be willing to promote the child's relationship with Respondent if the child were permitted to relocate."

There was evidence presented at the hearings that Plaintiff Mother engages in behavior which portrays Defendant Father in a negative manner to the child. Trial exhibit F-3 is a series of Facebook posts wherein Plaintiff Mother publicly comments on Defendant Father's alleged negative behavior towards the child. In one, Plaintiff Mother posts two pictures of the child with a new haircut and states: "Oh no! What did your father do to the beautiful bleached blonde hair you cultivated all summer?" The comment and photos are followed by a frowning face. Another Facebook photo and post states: "The little man was upset that his Dad took his siblings and cousin to the Eagles game without him, and surprised them with personalized shirts, as well. So, Mom to the rescue. Results...a happy little man! Hopefully next year he

25

and I will get to a game at Lincoln Field." Yet another Facebook post is a quotation which reads "Any woman can be a mother, but it takes a Bad-A** Mom to be a dad too."

Trial exhibit F-4 is a list of negative comments which Defendant Father states that Plaintiff Mother has made about him to the child. Number 11 on the list is a comment which the child made to Defendant Father when the child asked Defendant Father: "Mommy said you don't want to be with me. Is that true?" Number 16 on the list is a comment made by the child where he said to Defendant Father: "Mom told me you never want to take me extra time like Mom does." The list also contains several instances where the child has made comments to Defendant Father that indicate that Plaintiff Mother has discussed details of the parties' marriage and divorce with the child to a degree which can be interpreted as inappropriate.

Dr. Pisa testified that Plaintiff Mother's negative behavior towards Defendant Father may thwart the child's relationship with Defendant Father and that it could have a very negative psychological impact on the child. Furthermore, Dr. Pisa stated on page 71 of his December 29, 2015 final report: "The examiner believes that there is not a pattern of behavior exhibited by Mother or Father to indicate that they are not supportive of [the child] maintaining a relationship with both parents. However, Mother's proposed geographic relocation would clearly alter [the child's] relationship with his dad."

Based on the evidence presented at the hearings, the court did not "improperly speculate" that Plaintiff Mother may not be willing to promote the child's relationship with Defendant Father if the child were permitted to relocate. The court

26

weighed the evidence with each and every custody and relocation factor, and found that Plaintiff Mother's prior behavior can be interpreted as being detrimental to encouraging and supporting Defendant Father's parenting role. Dr. Pisa himself stated in his report that even his belief that there is not a pattern of "behavior exhibited by Mother or Father to indicate that they are not supportive of [the child] maintaining a relationship with both parents" needs to be weighed against the fact that the child's relocation to Florida would "clearly alter [the child's] relationship with his dad."

For the above stated reasons, the Court did not err or improperly speculate that Plaintiff Mother may not be willing to promote the child's relationship with Defendant Father if the child were permitted to relocate to Florida. Plaintiff Mother's allegation in paragraph l. of her concise statement is without merit, contrary to the evidence, and should be dismissed.

m.    "The Court erred in applying and adopting Dr. Pisa's conclusions that if the child were to relocate to Florida, 'in his opinion the child's loss from being separated from Father and Father's extended family would outweigh any benefit gained by Mother in relocating."

On July 6, 2015, Plaintiff Mother filed a petition for a custody evaluator to be appointed in this matter. On July 20, 2015, the court issued an order stating that by agreement of the parties, Dr. Anthony Pisa would perform a custody evaluation, the costs of which were to be paid by Plaintiff Mother. Dr. Pisa completed his evaluation, and submitted a final report on December 29, 2015. On the first day of hearings, February 17, 2016, Plaintiff Mother called Dr. Anthony Pisa as a witness, Both parties stipulated to Dr. Pisa's qualifications as an expert in child custody

27

evaluation. Dr. Pisa's December 29, 2015 final report was marked as trial exhibit M-1 and moved into evidence by Plaintiff Mother's counsel.

The court did not accept Dr. Pisa's recommendation as the sole reason to deny Plaintiff Mother's request for relocation. The court read Dr. Pisa's report and recommendation, assessed his testimony, and weighed both the report and the testimony with the evidence presented at the hearings, as well as with the custody and relocation factors. Neither party presented any persuasive evidence that Dr. Pisa's evaluation and subsequent report were inherently flawed, biased, or unreliable. Therefore, the court did not err in considering Dr. Pisa's conclusions that if the child were to relocate to Florida, "in his opinion the child's loss from being separated from Father and Father's extended family would outweigh any benefit gained by Mother in relocating." Plaintiff Mother's allegation in paragraph m. of her concise statement is without merit and should be dismissed.

n.     "The Court failed to consider the uncontroverted and well-reasoned
       preference of the child, which was to be able to relocate with Petitioner."

By agreement of the parties, the court did not interview the child as part of the custody determination in this matter. At the conclusion of testimony on June 15, 2016, Defendant Father's counsel stated: "we're in agreement, Your Honor, that we don't need [the child] as a witness to testify in this case." N.T. June 15, 2016 at 198.

The only instance of the child expressing a preference as to relocation comes from the child's interview with Dr. Pisa as part of the custody evaluation. At the February 17, 2016 hearing, Dr. Pisa agreed with Defendant Father's counsel's statement that the child told Dr. Pisa he wanted to move to Florida because his

28

mother's hand hurts and she'll be better in Florida. However, when asked by Defendant Father's counsel: "do you think an eight year old can really understand what moving across the country means?", Dr. Pisa replied: "No". N.T. February 17, 2016 at 159. Counsel asked: "So this coming in and telling you adamantly he wanted to move to Florida is really his reading his mother in that respect, correct", to which Dr. Pisa replied: "His internalization of his mother, yes." N.T. February 17, 2016 at 159. Defendant Father's counsel asked: "In fact, he clearly was prepped for that meeting, to talk about Florida?", to which Dr. Pisa replied: "He was prepared, yes." N.T. February 17, 2016 at 159.

The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. Wheeler v. Mazur, 793 A.2d 929, 2002 PA Super 46. Although the court took the child's stated preference in the custody evaluation into account when reaching a decision in this matter, based on Dr. Pisa's testimony, the court did not find that the child's preference was "uncontroverted and well-reasoned". According to Dr. Pisa, the child had been "prepared" to state his preference in terms of Plaintiff Mother's needs, not his own. Furthermore, the court also took into consideration the child's young age (eight years old at the time of the hearings) when reaching a decision.

For the above stated reasons, the court did not err or fail to consider the preference of the child when reaching a decision in this matter. Plaintiff Mother's allegation in paragraph n. of her concise statement is without merit and should therefore be dismissed.

29

In the Court's July 26, 2016 Order, the court did not err or abuse its discretion in denying Plaintiff Mother's request for relocation, and for granting Defendant Father two additional overnights of physical custody per month. Plaintiff Mother did not prove that "a significant improvement in the quality of life for that parent and child" would occur if she were permitted to move to Florida with the child.  Tripathi, PA Super 322 (2001). For the above reasons, the trial court respectfully requests that Plaintiff Mother's appeal be dismissed and the court's July 26, 2016 order be affirmed.

**BY THE COURT:**

**PATRICIA E. COONAHAN, J.**

Copies of the above Opinion sent
on /0//F//6 to the following:
**By First-Class Mail:**
Maria Testa, Esquire
Cheryl L. Young, Esquire

Secretary

30