Katherine Ann MAURER, n/k/a
Katherine Ann Hardy,
Appellant,

v.

Francis Joseph MAURER, Appellee.

Superior Court of Pennsylvania.

Argued July 27, 2000.

Filed Aug. 21, 2000.

Richard A. James, Media, for Appellant.

Francis J. Maurer, appellee, pro se.

BEFORE JOYCE, LALLY–GREEN and BECK, JJ.

BECK, J.:

¶ 1 In this appeal from the trial court's order denying Appellant/Mother's petition to relocate to Florida with the parties' minor children, we consider whether the court engaged in a proper assessment of the factors set forth in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). Because the court's *Gruber* analysis is free from error, we affirm.

¶ 2 Mother sought permission from the court to move from her home in Delaware County, Pennsylvania to Florida. As the basis for her petition, Mother asserted that her father (hereinafter "Grandfather") was the primary means of support for her and her children, a son age four and a daughter age two.[1] Apparently, Grandfather's income from his pension and other sources was insufficient to support his daughter and grandchildren. As a result, he applied for and received an offer for a position with his previous employer, the

---

1. The record reflects that pursuant to a court order, Appellee/Father paid Mother $65.00 per week in child support. Grandfather paid all other expenses for Mother and her children.

Federal Emergency Management Agency (FEMA). Although Grandfather worked in the Philadelphia area for most of his FEMA career, he could not obtain a position there. Instead, he was offered a job with the Florida Hurricane Center. His opportunity to work sporadically at the Hurricane Center, while still receiving his pension, made the offer an appealing one, as it would have increased his income by approximately $30,000.00 annually.

¶ 3 At a hearing on the petition, Grandfather testified that he paid all of his daughter's expenses and most of his grandchildren's. He testified that he supplied housing, food, clothing, pre-school tuition and the cost of various other classes for the children. Grandfather further explained that he and his daughter had an agreement whereby she would care for the children at home until they entered school, at which time she would begin to support her family. At the time of the hearing, she was not employed and had not been since the birth of her first child.

¶ 4 Appellant/Mother's testimony corroborated Grandfather's with respect to finances. In addition, Mother testified that the children relied primarily on her for daily care. Mother stated that Father's parents, with whom he lived until two weeks before the hearing, typically picked up the children for weekend visitation. Sometimes, according to Mother and Grandfather, Father cancelled planned visits. Finally, Mother testified that she approached Father about the move to Florida, but he was opposed to it and would not discuss details.

¶ 5 Appellee/Father testified that he was against the proposed move. When questioned by the court, he stated that although there may be some way the move could work, he didn't know how. He offered that his work hours would preclude extended visits with the children, either at his home or in Florida. Further, he testified that the cost of air travel would be prohibitive for him. The record established that Father worked the nightshift

stocking shelves at a grocery store. His hourly wage is $9.00 on weekdays and $11.00 on weekends. The weekly $65.00 child support payment is taken directly from his paycheck. According to Father, his parents handled transportation of the children so that he could catch up on sleep after night work.

¶ 6 After a complete hearing on the merits, the trial court denied Mother's petition and this timely appeal followed.

¶ 7 Our standard of review is well settled:

> [W]e are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported by the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Thomas v. Thomas*, 739 A.2d 206, 209 (Pa.Super.1999) (*en banc*).

¶ 8 The *Gruber* case sets out a three-prong test to be applied in the event of a primary custodian's relocation request. In such cases, the trial court must consider:

1. the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

2. the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

3. the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Gruber*, 583 A.2d at 439.

■ ¶ 9 In all instances where a custodial parent seeks to relocate and the non-custodial parent opposes the move, the burden is on the custodial parent to establish a significant improvement in the quality of life for that parent and child.[2] *Id.* at 440. Further, with respect to the first *Gruber* prong, the potential advantages of the move, the trial court is not permitted to rely solely on "enhanced economic opportunities ... but must also assess other possible benefits of relocation" such as a "return to a network of family or friends, ... educational opportunities, or ... an improved physical environment." *Id.* at 439.

■ ¶ 10 Our review of the record in this case leads us to conclude that the only improvement Mother established was an economic one. Admittedly, many benefits flow from an increase in economic status. However, that factor alone is insufficient to justify the relocation of the children in this case. This is particularly true because Father is at an economic *disadvantage* here. Due to the nature of his work, Father would not only have difficulty meeting his financial obligations for the extended (and less frequent) visits from or to his children, but his work hours would make such visitation far more burdensome. *Gruber* recognizes that "former weekly visitation may have to give way to an altered schedule which allows for less frequent but more extended contact between [non-custodial] parent and child." *Id.* However, *Gruber* also instructs that "shifting visitation arrangements to account for geographical distances" should occur only where the proposed move "has been shown to offer real advantages to the custodial parent and the children." *Id.*

■ ¶ 11 The trial court observed that Mother failed to investigate, either in Pennsylvania or Florida, "her education or job-training or employment opportunities."[3] Trial Court Opinion, 2/10/00, at 8. In addition, she did not offer evidence on "how the move would impact upon the children socially, or in terms of future education." *Id.* Finally, Mother did not offer sufficient evidence of an alternative visitation plan. Although she testified that Father could see the children in Florida during his vacation and that the children could travel to see Father for "how ever long" in the summer and perhaps some holidays, Mother offered little evidence of a realistic substitute arrangement.[4] The trial court concluded that Mother failed to present a "practical, specific and viable alternative plan for visitation." *Id.* at 9.

¶ 12 After a review of the record, including the hearing transcript, we conclude that the record supports the trial court's findings. We do not agree with Mother that the trial court ignored Grandfather's role in this case. Indeed, the court recognized the significant part Grandfather plays in the lives of his daughter and grandchildren. But, as required by *Gruber*, the court refused to restrict its assessment of this case to the economic benefits Grandfather could bestow upon his family should the move be allowed.

¶ 13 Further, the trial court did not fail to inquire into Father's motive in opposing the move, but instead determined that Fa-

**2.** The application of *Gruber* has been extended to cases in which both parents share custody and one parent seeks to relocate. See *Thomas v. Thomas*, 739 A.2d 206 (Pa.Super.1999).

**3.** Apparently, Mother was to begin education or job training once her younger child was weaned. The record establishes that the child had been weaned by the date of the hearing. However, Mother gave no testimony regarding her inquiries into work, education or job training.

**4.** Mother stated that she offered to split the cost of the children's air travel with Father.

ther did so because he believed the circumstances surrounding it were unworkable.

¶ 14 Finally, we reject Mother's assertion that it is the duty of the trial court *alone* to create the substitute visitation arrangement envisioned by *Gruber*. As the party seeking to relocate, Mother bears the burden of establishing the *Gruber* factors. While the duty to *fashion* a substitute visitation plan ultimately lies with the trial court, the petitioning party must offer concrete evidence of the manner in which he or she will work to sustain and foster the bond between the child and the non-custodial parent. The trial court cannot be expected to shape such a plan without sufficient evidence from the petitioner.

¶ 15 Based on the record and the trial court opinion, we find that a proper *Gruber* analysis occurred in this case.

¶ 16 Order affirmed.