Timothy BOYER, Appellee,

v.

Lynn SCHAKE, Appellant.

Superior Court of Pennsylvania.

Argued March 20, 2002.
Filed May 14, 2002.

Craig H. Alexander, Murrysville, for appellant.

Timothy Boyer, Pittsburgh, for appellee.

Before JOHNSON, BENDER, and MONTEMURO * JJ.

JOHNSON, J.

¶ 1 Lynn Schake ("Mother") appeals the denial of her Motion for Special Relief requesting allowance for immediate relocation to Virginia Beach, Virginia with her minor child ("Child") from Pittsburgh, where Child's father, Timothy Bower ("Father"), lives. Mother contends that the trial court erred when it concluded that she failed to meet two of the three prongs of the test announced in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990) concerning relocation of the custodial parent. Mother is the custodial parent and argues that she proved that the move would substantially improve her life and that of Child. She contends that realistic substitute visitation arrangements were available for Father. We agree that the trial court erred in its application of the *Gruber* test and therefore, reverse the order and remand to the trial court for further action in compliance with this Memorandum.

¶ 2 Although Mother and Father never married, they resided together from 1992 through 1998, and Child was born in June 1995. In February 1998, Mother and Father ended their relationship. Pursuant to a December 1998 consent order, the parties shared legal custody of Child while Mother had primary physical custody. Father had partial custody for several hours on Tuesdays and Thursdays and every other weekend. The parties split holiday custody. Father regularly paid child support until the summer of 2000 when he fell in arrears after suffering a disability and later being placed on lay-off status.

¶ 3 After the separation, Mother became involved with and later engaged to Jeff Suriano. Father is currently engaged as well. In March 2000, Suriano received a promotion requiring his relocation to Virginia Beach. Suriano had been manager of a Pittsburgh Rite Aid Store and received a promotion to district manager in Virginia Beach. He had previously declined a position requiring his relocation to the West Coast. After learning from Mother

* Retired Justice assigned to the Superior Court.

her desire to relocate with Child, Father filed a Petition to Prevent Relocation. In June 2000, at the trial court's direction, Mother filed a Petition for Relocation. Mother requested relocation in order to be reunited with Suriano. Mother asserted that Suriano was supporting her in Pittsburgh as well as maintaining a home in an upper-middle class neighborhood of Virginia Beach. She further contended that this support might not continue indefinitely and suggested that the marriage might be in question if the court denied relocation.

¶ 4 After two delays, the scheduled Relocation Conciliation occurred on July 21, 2000. Father requested and received leave to engage in discovery, which included psychological evaluations of both parents, their fiancées and Child. In August 2000, Mother filed a Motion for Special Relief requesting immediate relocation. In October 2000, the court held a hearing on the matter at which Mother argued that relocation would benefit Child by reuniting her custodial family. Mother testified that they had lived with Suriano for two years and that she planned to marry him the next month. The psychologist recommended the relocation if visits with Father could be assured. The trial court denied the petition in November 2000 citing a lack of substitute visitation arrangements and Mother's failure to prove substantial improvement in Mother's and Child's lives. Mother now appeals the trial court's denial of her relocation request.

¶ 5 Mother presents the following question for our review:

Whether the trial court committed an abuse of discretion or error of law in holding that Mother failed to meet her burden of satisfying the three prong test relevant to the determination of whether a custodial parent may relocate a geographical distance away from a non-custodial parent as set forth in *Gruber v. Gruber*, 400 Pa.Super. 174 [583 A.2d 434 (1990)?]

Brief for Appellant at 4.

¶ 6 As with all custody cases, our scope of review is plenary. *See Maurer v. Maurer*, 758 A.2d 711, 713 (Pa.Super.2000). Our standard of review in custody matters is well-settled. We are "not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record." *Id.* (citation omitted). We are not authorized to "nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court." *Id.* "Rather, we are bound by findings supported by the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Id.*

¶ 7 Mother contends that the trial court erred or abused its discretion when it concluded that Mother failed to satisfy her burden regarding two of the three prongs of the *Gruber* relocation test. Brief for Appellant at 9. She argues that the trial court erred in concluding that she did not establish a substantial improvement in the lifestyle of Mother and Child as a result of the proposed relocation. Brief for Appellant at 9–10. Specifically, Mother contends that the trial court erred in concluding that evidence of economic benefits alone does not satisfy the substantial improvement prong of the *Gruber* test. Brief for Appellant at 17–20. She argues that even if economic benefits alone are insufficient, she still met her burden of proving a substantial improvement by way of a reunited custodial family. Brief for Appellant at 21–25.

¶ 8 Furthermore, Mother argues the trial court abused its discretion in concluding that the proposed partial custody schedule was insufficient even though Mother agreed to allow visitation in addition to the arrangement proposed by the psychologist. Brief for Appellant at 12–15. Mother contends that under the trial court's analysis "a parent would never be able to meet the third prong of the *Gruber* test especially with relocation great distances away from Pennsylvania such as to the Midwest or West Coast." Brief for Appellant at 14.

¶ 9 As in all custody cases, a court's primary concern is the child's best interest. *See Thomas v. Thomas,* 739 A.2d 206, 210 (Pa.Super.1999) (en banc). In *Gruber,* this Court specified a three-prong test for a trial court to assess whether a proposed relocation is in the child's best interest. *See Gruber,* 583 A.2d at 439–441. First, the court must determine "the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent." *Id.* at 439. Furthermore, we stated that the trial court cannot disregard non-economic benefits. *See id.* at 439. The burden of proof of the first prong is on the custodial parent requesting relocation. *See id.* at 440.

¶ 10 The second prong requires each parent to show the integrity of the motives for seeking the grant or denial of the relocation petition and that neither parent is seeking to frustrate the other and in particular the non-custodial parent's visitation rights. *See Gruber,* 583 A.2d at 439–440. "An aspect of this determination is the degree to which the court can be confident that the custodial spouse will comply cooperatively with alternate visitation arrangements which the move may necessitate." *Id.* at 439.

¶ 11 The final prong of the test is whether the non-custodial parent has "the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent." *Gruber,* 583 A.2d at 439. We do not require visitation to be as frequent as prior to the relocation in order to allow the relocation. *See id.* "[T]he necessity of shifting visitation arrangements to account for geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and the children." *Id.* at 439. "Sensitive case-by-case balancing is required to ensure that all interests are treated as equitably as possible." *Id.* at 440. Furthermore, we are aware that "when relocation is likely to result in a substantially enhanced quality of life for a custodial parent, often the child's best interests will be indirectly but genuinely served." *Id.* at 438.

¶ 12 The trial court relied on our decision in *Maurer* and concluded that "an economic benefit is insufficient in itself to satisfy the first *Gruber* factor." Trial Court Opinion, 6/29/01, at 5. We disagree with the trial court's interpretation of *Maurer,* 758 A.2d 711.

¶ 13 This Court in *Maurer* stated:

[W]ith respect to the first *Gruber* prong, the potential advantages of the move, the trial court is not permitted to rely solely on "enhanced economic opportunities ... but must also assess other possible benefits of relocation" such as a "return to a network of family or friends, ... educational opportunities, or ... an improved physical environment." ... Our review of the record in *this case* leads us to conclude that the only improvement Mother established was an economic one. Admittedly, many benefits flow from an increase in economic status. However, *that factor alone is*

*insufficient to justify the relocation of the children in this case.*

*Maurer,* 758 A.2d at 714 (emphasis added) (quoting *Gruber,* 583 A.2d at 439). Our conclusion regarding economic benefits in *Maurer* was limited to the facts of the case and should not be applied to all relocation cases as suggested by the trial court. We have previously held in *Kaneski v. Kaneski,* 413 Pa.Super. 173, 604 A.2d 1075, 1078–1079 (1992) and *Perrott v. Perrott,* 713 A.2d 666, 672 (Pa.Super.1998) that while non-economic benefits "must not be ignored or overlooked, [*Gruber*] did not require that a move which would significantly improve the quality of life on an economic basis be precluded because other less tangible factors were lacking." *Kaneski,* 604 A.2d at 1078–79. In *Gruber,* rather than narrowing the potential reasons for granting relocation, our Court provided an expansive realm of benefits supporting relocation. *See Gruber,* 583 A.2d at 439 ("In *considering the prospective advantages to the move,* a court shall not limit itself solely to enhanced economic opportunities for the custodial parent but must also assess *other possible benefits of the relocation.*") (emphasis added). Furthermore, we do not conclude that *Maurer* precluded the possibility that economic improvement could satisfy the prong by itself, but that in that case the economic benefits did not sufficiently improve the custodial family's life.

¶ 14 We note that this Court has concluded that non-economic benefits must be shown in cases involving joint custody wherein an economic benefit to one parent might not provide a substantial benefit to the child's life. *See Thomas,* 739 A.2d at 211 n. 2. We distinguish the present case from *Thomas,* as Mother is the primary custodian and, at least immediately prior to the hearing, Suriano apparently provided the primary economic support of Child.

¶ 15 The trial court does not provide us with findings of fact regarding the significance of the potential economic benefit which Mother and Child might experience as a result of relocating to Virginia. We question the trial court's suggestion that Mother already experiences the benefits from Suriano's promotion because he is supporting them in Pittsburgh. Trial Court Opinion, 6/29/01, at 5. We presume that the economic benefit would be significantly greater if Suriano did not have to maintain two households. The economic benefit may well provide Mother and Child with a significantly higher standard of living and thus satisfy the first prong of *Gruber.*

¶ 16 Furthermore, such an improvement in Child's standard of living may well justify the long travel required for substitute visitation. We question the trial court's conclusion that a monthly sixteen-hour round trip custody transfer is unacceptable as such a holding would block *any* long distance relocation even in cases where the child had substantial benefits from relocation. A change in visitation arrangements necessitated by "geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and the children." *Gruber,* 583 A.2d at 439. Therefore, a sixteen-hour car trip may well be acceptable where the advantages of relocation justify the hours in the car. We also note that the hours spent driving are not necessarily wasted hours but may provide an opportunity for uninterrupted conversation between parent and child.

¶ 17 As a result of the trial court ignoring the economic benefit because of a perceived lack of non-economic benefits, we must reverse the trial court's denial of Mother's petition for relocation. We remand for further proceedings consistent with this Opinion. Furthermore, we note

that this case has been in the court system since the spring of 2000 due to delays of the courts and the parties. Therefore, we request that the trial court and the parties expedite the proper resolution of this case.

¶ 18 Order **REVERSED**. Case **RE-MANDED**. Jurisdiction **RELIN-QUISHED**.