J-A17016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN MAHALIK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HEATHER MAHALIK | : | No. 833 EDA 2024 |

Appeal from the Order Entered March 4, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2023-05198-CU

BEFORE:  BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                **FILED OCTOBER 9, 2024**

Appellant Justin Mahalik (Father) appeals from the order granting Appellee Heather Mahalik's (Mother) petition for relocation and modification of a child custody order relating to J.M. and N.M. (collectively, the Children). Father argues that the trial court violated his due process rights by entering an interim custody order altering the previous custody arrangement and contends that the trial court abused its discretion by entering an order granting Mother's petition following a three-day custody and relocation trial. After careful review, we reverse the trial court's order granting modification of custody and relocation and remand for further proceedings.

The trial court set forth the following factual and procedural history:

The parties are former spouses whose divorce became final on August 17, 2022.  They are the parents of two (2) children . . . of the marriage: J.M., born [in] July [of] 2013, and N.M., born [in] January [of] 2017.  [Mother] has since remarried and has two stepdaughters.  Prior to the finalization of their divorce, the parties

entered a property settlement agreement on March 9, 2022 which provided, among other things, that the parties share legal and physical custody of the Children. The parties were observing a shared 2-2-3 custody schedule pursuant to the property settlement agreement. In the early to mid-summer of 2023, Mother advised Father that she intended to move to Maryland with the Children in August. Strenuously opposed to Mother's proposed relocation, Father filed a complaint in custody on July 25, 2023. Mother filed a demand for trial on July 26, 2023. Mother filed a notice of proposed relocation on August 16, 2023.

The parties attended a custody conciliation conference on August 30, 2023 with Chester County Custody Conciliator Keith Boggess, Esquire. Without having reached an agreement between the parties, but pursuant to the Chester County Local Rules of Civil Procedure then in effect, Custody Conciliator Boggess issued a recommended custody order on September 1, 2023 providing for primary physical custody to Mother and partial physical custody to Father. The recommended custody order contained a notice that read, "UNLESS A DEMAND FOR TRIAL, A CERTIFICATE OF TRIAL READINESS AND A PRE-TRIAL STATEMENT HAVE BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE. *See* C.C.R.C.P. 1915.4(a)." The Honorable Patrick J. Carmody of [the Court of Common Pleas of Chester County] signed the recommended custody order on September 5, 2023, making it an order of the [trial] court.

On September 15, 2023, Father filed a counter-affidavit regarding relocation, objecting to Mother's proposed relocation and to the modification of the [previous] custody order and requesting that a hearing be held on both matters prior to any relocation taking place. Father also filed on September 15, 2023 an emergency petition to stay the September 5, 2023 custody order. On September 18, 2023 Mother filed a formal petition for relocation as well as another demand for trial. In her petition for relocation, Mother explained that her request to relocate was premised upon her acceptance of a new position with her employer that required her to live within commuting distance to Vienna, Virginia, and as well upon her marriage to Stepfather, who resided in Maryland with his two children. On September 28, 2023, Father filed a motion to vacate and strike the custody order of September 5, 2023. On October 4, 2023, Mother filed an answer to Father's emergency petition to stay the September 5, 2023 custody order. She also filed an answer to Father's motion to vacate and strike

the custody order of September 5, 2023. On October 23, 2023, Father filed a demand for trial. On December 1, 2023, Father filed an answer to Mother's petition for relocation.

On December 13, 2023, Father filed a praecipe to withdraw his emergency petition to stay the September 5, 2023 custody order. However, although it was represented that opposing counsel did not oppose the praecipe, the Honorable William P. Mahon of [the Court of Common Pleas of Chester County] struck the praecipe from the docket by order dated December 13, 2023. By order dated December 29, 2023, Judge Mahon marked Father's petition to stay as withdrawn and decreed that Father's motion to vacate and strike the custody order of September 5, 2023 would be consolidated with the custody trial scheduled before the [trial court] in January 2024.

[The trial court] held a custody/relocation trial that lasted three (3) days from January 2, 2024 through January 4, 2024. At the hearing, the following people testified: Mother, Father, Rosemary Russell (the Children's former nanny), [Stepfather], Dennis Kirby (C.O.O. SANS Institute), Rachel Topper ([vice president] of human resources—Americas for Cellebrite, Inc.), Theresa Burns (family friend), Lynne Ippolito (family friend), Thomas Ippolito (family friend), and Stephen Cusa (family friend). The parties asked the [trial court] to refrain from conducting *in camera* interviews with the Children and [the trial court] honored their wishes in that regard.

On February 29, 2024, [the trial court] issued a custody order granting Mother's petition for relocation and modifying the parties' existing custody arrangement as set forth in the September 5, 2023 order to provide Father with increased custody pending Mother's relocation with the Children in the summer of 2024. Father filed his timely Children's Fast Track appeal on March 14, 2024. He attached a concise statement of errors complained of on appeal as required by Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).

Trial Ct. Op., 4/19/24, at 1-4 (formatting altered). The trial court subsequently filed an opinion addressing Father's claims.[1]

During the pendency of the instant appeal, Father filed an application to stay the trial court's February 29, 2024 custody order filed on March 4, 2024, that granted Mother's petition for relocation and modification of custody. On August 13, 2024, we entered a *per curiam* order granting Father's application for stay pending the disposition of this appeal. ***See*** Order, 8/13/24. Mother filed an emergency application to lift the stay with our Supreme Court on August 16, 2024. The Supreme Court denied Mother's application in a *per curiam* order on September 4, 2024. ***See Mahalik v. Mahalik***, 89 MM 2024.

On appeal, Father raises the following issues for our review:

1. Did the trial court commit a reversible error of law by denying Father due process because the trial court entered the relocation order at issue based, in part, on a custody order entered in September 2023, after a custody conciliation conference by a custody conciliator acting under Pa.R.C.P. 1915.4-3 without a record hearing, without testimony of the parties under oath, without evidence presented and without the required analysis of the custody factors set forth in 23 Pa.C.S. § 5328(a)?

2. Did the trial court abuse its discretion and commit a reversible error of law by granting relocation when the facts of record do not support the conclusion that relocation should be granted, and the trial court's decision is in direct contravention to application [sic] statutory and case law[?]

---

[1] The order giving rise to the instant appeal was filed in the trial court on February 29, 2024. The trial court docket indicates that copies of the order, however, were not sent to the parties and their respective counsel until March 4, 2024. The caption, therefore, reflects that the trial court's order giving rise to the instant appeal was filed on March 4, 2024. ***See*** Pa.R.A.P. 108(a)(1).

3. Did the trial court abuse its discretion and commit a reversible error when it failed to implement a custody schedule that would preserve Father's relationship with the [C]hildren and allow them to remain in Chester County while Mother commuted for work, in direct contravention to the applicable statutory and case law?

Father's Brief at 4.

In his first issue, Father contends that the trial court violated his due process rights by improperly relying upon the interim custody order entered after the custody conciliation conference, which was held pursuant to Pa.R.C.P. 1915.4-3. *Id.* at 13. Specifically, Father argues that his custody was drastically reduced and that there was no evidence presented and subject to cross-examination, no testimony under oath, and no analysis of the sixteen custody factors set forth in the Child Custody Act. *Id.* at 14; *see also* 23 Pa.C.S. § 5328(a)(1)-(16) (setting forth the sixteen custody factors).

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

- 5 -

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

In *E.B. v. D.B.*, 209 A.3d 451 (Pa. Super. 2019), the appellant argued that the entry of an interim custody order following a judicial conciliation deprived him of due process. *E.B.*, 209 A.3d at 460-61. Ultimately, this Court concluded that in cases where there is no emergency or apparent urgent need to preserve the well-being of the child, and in a case where custody had been heavily litigated, it was an abuse of the trial court's discretion to alter the status quo with an interim custody order without providing the parties the opportunity to be heard after full preparation. *Id.* at 466.

However, the *E.B.* Court noted that the relief that the appellant sought was impossible to achieve, as the appellant's requested relief was "tantamount to 'unringing the bell.'" *Id.* Specifically, the *E.B.* Court explained:

> [W]e cannot redress this error [*i.e.*, another trial judge's decision to permit the mother and child to relocate on an interim basis without a hearing] by eliminating all the proceedings that have occurred until this point. Our review must be based on the best interests of the child at the time of the present hearing. In custody proceedings, the paramount concern is the welfare of the children; all other considerations, including the rights of the parents, are subordinate to the children's physical, intellectual, moral, spiritual, and emotional well being. We cannot ignore the last two years of the child's life in Maryland as though they never occurred. Therefore, we find that the trial court was correct in determining that it would be useless to pass judgment on the prior decision, but could appropriately consider the effect of that decision on the welfare of the minor child.
>
> [*Plowman v. Plowman*, 597 A.2d 701, 707 (Pa. Super. 1991).]

- 6 -

> The inability to unring the bell or re-set the clock in custody cases is why it is all the more paramount for trial courts to abide by due process at all times with an eye towards a child's best interest. The very nature of custody cases mandates different procedures under different circumstances, but trial courts should be wary of upending the status quo prematurely without substantial justification that the change was warranted by a child's best interest. Accordingly, we conclude that the trial court abused its discretion, but as in *Plowman*, because the ultimate polestar is a child's best interest, we also are constrained not to disturb the interim order.

*E.B.*, 209 A.3d at 467 (some formatting altered).

Here, in its Rule 1925(a) opinion, the trial court acknowledged that the Chester County local rule in effect at the time of the interim custody hearing has since been deemed unconstitutional by the Court of Common Pleas of Chester County and that the temporary order "was unconstitutional and deprived Father of his due process rights." Trial Ct. Op., 4/19/24, at 6-17.

However, the trial court explained:

> [W]e cannot un-ring the bell and travel back in time so that the Children can spend more time or different amounts of time with one or the other parent retroactively. We must confine ourselves to the issue of whether the record as it was presented to the [trial court] on January 2, 3, and 4[,] 2024 supports [its] conclusion that it is in the best interests of the Children that Mother receive primary physical custody and be permitted to relocate with them to New Market, Maryland.

*Id.* at 18.

Based on our review of the record, we discern no abuse of discretion. *See C.R.F.*, 45 A.3d at 443. Indeed, the record reflects that the trial court considered the status quo custody arrangement that was a direct result of the September 5, 2023 interim custody order. *See* Trial Ct. Op., 4/29/24, at 4-

- 7 -

6. The trial court, when determining the best interest of Children, cannot be expected to ignore the effects of the September 5, 2023 interim custody order. *See E.B.*, 209 A.3d at 467; *Plowman*, 597 A.2d at 707. Accordingly, although we agree that Father's due process rights were violated by the entry of an interim custody order without a full hearing, we cannot turn back the clock and retroactively grant relief. *See E.B.*, 209 A.3d at 467. Therefore, Father is not entitled to relief on his first issue.

We address Father's remaining issues together. Father contends that the record does not support the trial court's conclusion that relocation should be granted. Father's Brief at 21. Specifically, Father argues that permitting relocation is not in the best interest of Children, and it "will be a traumatic change to their lives and will undoubtedly cause a severe emotional toll." *Id.* at 22. Father further argues that the trial court placed too much weight on Mother's earning capacity should she relocate to Maryland and, as a result, reached an unreasonable conclusion. *Id.* at 31-32. Finally, Father contends that "[t]he only factor the trial court found in favor of Mother's relocation is that it will improve her own quality of life." *Id.* at 54 (emphasis omitted).

This Court has consistently held that

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral[,] and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 & n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a)  Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

- 9 -

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Where a request for relocation of a child along with a parent is involved, the trial court must also consider the following relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). The party seeking relocation has the burden of proving that relocation will serve the best interests of the child or children in light of these ten factors. *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa. Super. 2017) (*en banc*); *see also* 23 Pa.C.S. § 5337(i)(1). "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

Further, with regard to the custody and relocation factors, this Court has stated:

**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order. Section 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, [S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen Section 5328[(a)] custody factors prior to the deadline by which a litigant must file a notice of appeal.

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's

- 12 -

explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (some citations omitted, formatting altered, and emphasis in original).

Additionally, this Court has stated that the trial court is required to consider all the applicable factors regarding custody and relocation. *E.C.S. v. M.C.S.*, 256 A.3d 449, 453 (Pa. Super. 2021). Although the trial court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a) and 23 Pa.C.S. § 5337(h), this Court has acknowledged that the amount of weight a trial court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). This Court has also stated that "[a] court should avoid dissociating the issue of primary custody from the issue of relocation, and should . . . decide the two issues together under a single umbrella of best interests of the children." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018) (citations omitted and formatting altered).

Critically, this Court has explained that

[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

*M.J.M.*, 63 A.3d at 339.

As noted previously, absent an abuse of discretion, we will not disturb a trial court's findings of fact or determinations regarding witness credibility or the weight of the evidence. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As this Court stated in *King v. King*, 889 A.2d 630 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion . . . ." *King*, 889 A.2d at 632 (citation omitted).

Here, with respect to relocation, the trial court provided an analysis of each of the sixteen custody factors and the ten relocation factors in its February 29, 2024 opinion. *See* 23 Pa.C.S. §§ 5328(a), 5337(h). Specifically, the trial court made the following findings:

> **(h)(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**
>
> [] Children have good relationships with both Mother and Father. They are quite bonded with both, and both have remained involved throughout their lives. Mother's proposed move to approximately two and a half hours away would have a major impact on [] Children's time with Father. Both parties have a good history of supporting the relationships [] Children enjoy with their extended family. By Mother's own admission, [] Children spent more time with Father's family than hers. Mother was clear in her testimony that she was actively involved in this path; in other words, Father did not do anything to limit or deter any relationship(s) with Mother's extended family. Mother was always supportive of the Children's relationships with Father's family and has continued to be so even throughout the instant litigation. We

- 14 -

do not believe the parties will have a problem maintaining the ties with extended family based on their histories, but the move would significantly impact Father's time with [] Children and this factor weighs in favor of his position for that reason.

**(h)(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.**

Removing [] Children from their current school and taking them away from their friends, in particular J.M. since he is older and has more established friendships, has the potential to have a negative impact on them.  Neither of the Children has significant special needs, although J.M. does struggle a bit with math.  Although it can be difficult to compare schools when different states are involved, we do find ample evidence to show that Downingtown is a better school district than Oakdale in Maryland.  This factor weighs clearly in favor of Father's position.

**(h)(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

The distance of a two-and-a-half hours' drive (at a minimum) is obviously too great for the parties to engage in a shared custody arrangement.  Therefore, one party would have to have primary and the other partial physical custody to suit [] Children's best interests.  The distance is enough to significantly impact Father's relationship with [] Children.  This family is certainly financially able to absorb travel costs without suffering.  Arrangements can be made, that while they in no way equal the time Father spends with [] Children, can provide substantial custodial time with him to preserve the relationship between him and [] Children.  For example, Father can be awarded a great portion of the summer break from school, which should fit well into the time he spends at his mother's residence at the beach in Ocean City, Maryland. Many of the heartwarming photographs of Father's time with [] Children presented in evidence appear to have been taken during summers, holidays and vacations, and, as stated, this type of time will actually increase.

**(h)(4) The child's preference, taking into consideration the age and maturity of the child.**

As discussed, the parties did not wish to have [] Children, or either of them, be interviewed by the [trial court].

**(h)(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

As previously stated, the parties historically did not thwart the relationship of [] Children with the other and even seemed to promote the relationship(s). Since the tension associated with the contested relocation has arisen, however, the parties are not expressing the same level of goodwill *pendente lite*, but the [trial court] is optimistic that they will reach *détente* at the conclusion of this matter and weighs this factor in favor of neither party. We specifically do not find that separating [] Children from Father is even a small part of Mother's motivation for wanting to relocate, and this factor favors permitting the move.

**(h)(6) Whether the relocation will enhance the general quality of life for the party seeking relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

Mother presented significant evidence that this move is a requirement for her to retain her job(s). Cellebrite is requiring her to be in the office located in Tysons Corner, Virginia, three days per week. To retain her job with SANS, Mother must be an "expert in the field" not just a platform instructor; Mother must keep her job with Cellebrite (or an equivalent) to keep her job with SANS. [The trial court] found the testimony of both Dennis Kirby, C.O.O. of SANS, as well as that of Rachel Topper, V.P. of HR for the Americas for Cellebrite, to be credible regarding the requirements of Mother's jobs, respectively. Father has taken the position that Mother can do her jobs remotely, and that due to her "superstar" status within both companies she is insulated from termination for noncompliance with Cellebrite's new policy. During the marriage, Mother traveled extensively for work but worked remotely (from home) when not traveling. Despite its foundation based in historical fact, we find Father's current position regarding how Mother should thwart the adequately proven company policy of Cellebrite because he does not believe they will fire her to be purely speculative. Mother is a very high earner, and the family has become accustomed to living a certain standard as a result of said earnings, to include housing, cars, first class travel, regular luxury vacations, etc. It is not only in

Mother's best interest for her to keep her current jobs, but also [] Children's, and to a lesser extent, Father's. In addition to the very important "work" portion of this factor, Mother's quality of life would certainly be enhanced by allowing her to live full-time in one residence with her husband. This factor has multiple facets, all of which weigh in favor of Mother, and we weigh it heavily.

**(h)(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**

Apart from the obvious benefits to [] Children of Mother being able to continue to earn close to a million dollars per year, it cannot be said that this move would *per se* enhance the general quality of life for [] Children. They would be leaving the friends, teammates, and, geographically anyway, some of the family circle they have always known, and, most importantly, decreasing the overall time spent with Father on a weekly basis during the school year. The educational opportunities are not greater at the proposed location and school district. Therefore, this factor weighs heavily in favor of Father.

**(h)(8) The reasons and motivation of each party for seeking or opposing the relocation.**

Mother does have reasonable, articulable employment and familial reasons for moving to New Market, Maryland. Father's opposition to the relocation is simply and appropriately driven by his desire to continue his constant and regular presence in [] Children's lives, something every parent has a right to expect. We often weigh this factor quite heavily in relocation cases. In the case at bar, this factor has been well proven by both sides, and therefore we are constrained to weigh it equally.

**(h)(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

As previously discussed, [the trial court] finds no continued risk of harm to [] Children in either home. Neither party's position is either aided or harmed by this factor.

**(h)(10) Any other factor affecting the best interest of the child.**

There were no other relevant factors presented by either party.

Trial Ct. Op., 2/29/24, at 11-15 (some formatting altered).

The trial court then provided the following overall analysis of the relocation factors:

Pursuant to Section 5337(i)(2), Mother has sufficiently established the integrity of her motives in seeking the relocation. A clear benefit of the proposed relocation to Mother and [] Children is Mother's ability to retain her unique and highly compensated jobs. Another significant benefit to Mother is that she would be able to live full-time in one location with her new husband as a stable family unit. Stepfather's daughters live and attend school in Maryland. He would not be able to maintain his current custodial arrangement if he were to move to Pennsylvania. Understandably, this is of no moment to Father, we therefore analyze it not as to its impact on Stepfather/his children, but only as to Mother, Children and its impact on their familial dynamic. Complicating the difficult decision before [the trial court], Father has also established the integrity of his motives in seeking to prevent the relocation in that it is driven by his desire to maintain his active role in their daily lives, and his not wanting to see [] Children torn from him or the school, friends, and teammates that they love.

Pursuant to Section 5337(i)(1), we find that Mother has carried her burden of establishing, by a preponderance of the evidence, that the relocation will serve the best interests of [] Children as shown under the factors set forth in subsection (h).

*Id.* at 15-16 (some formatting altered).

Importantly, when analyzing the sixteen custody factors,[2] the trial court found that Children are "thriving" in the Downingtown Area School District,

_____

[2] We note that our decision in the instant appeal is focused on relocation. As Mother notes in her brief, Father does not contest the trial court's finding that awarding Mother primary physical custody of Children is in Children's best interest. *See* Mother's Brief at 15-16. However, we must still consider the trial court's analysis of the custody factors as courts are required to consider

*(Footnote Continued Next Page)*

- 18 -

and that educational stability favors Children remaining in the district. *Id.* at

5.[3] Specifically, the trial court reached the following conclusion:

> [] Children have friends where they live now, and both are involved in many activities. Mother's requested residence is in a whole new town, county, and state about two and a half hours from where [] Children have always lived. This portion of the factor weighs heavily in favor of Father's position as [] Children's current connections are based here, and neither of the Children would know a soul in New Market, Maryland.

*Id.* at 6. Moreover, the trial court recognized that "[t]here is no doubt that

Father's custodial time and his regular participation in [] Children's lives would

be significantly curtailed by the proposed relocation. . . . Were Mother to

relocate as desired, this factor weighs heavily in favor of Father's position,

---

"the two issues together under a single umbrella of best interests of the children." *S.S.*, 189 A.3d at 1098 (citations omitted and formatting altered).

[3] The trial court stated its analysis under Section 5328(a)(4) of the Act (relating to need for stability and continuity in Children's education, family life and community life) was based on Father's intent to establish a residence within the Downingtown Area School District. *See* Trial Ct. Op., 2/29/24, at 5. We note that in his July 26, 2024 application for stay, Father stated that he established a residence within the Downingtown Area School District and contends that Children can remain enrolled in the Downingtown Area School District. *See* Father's Appl. for Stay, 7/26/24, at unnumbered page 8, ¶ 28. We caution, however, that Father's newly established residence has not been factually determined by the trial court, and we do not make any factual findings regarding Father's current residence. *See Boyer v. Schake*, 799 A.2d 124, 126 (Pa. Super. 2002) (stating that this Court has no authority to usurp the fact-finding function of the trial court and that this Court is bound by factual findings supported by the record).

assuming he moves within the confines of the Downingtown Area School District[.]" *Id.* at 9 (formatting altered).[4]

Based on our review of the record, we find that the trial court abused its discretion when it granted Mother's petition to relocate to New Market, Maryland with Children. *See C.R.F.*, 45 A.3d at 443. While courts of this Commonwealth are not to engage in the tallying of either the custody or relocation factors, in the instant case the trial court's final analysis of relocation is at odds with its individual analyses of the ten relocation factors. Accordingly, we are constrained to conclude that the trial court's findings are

_____

[4] We note that in its consideration of the sixteen custody factors, the trial court found that the following factors weighed in Mother's favor: 23 Pa.C.S. §§ 5328 (a)(1) (which party is more likely to encourage and permit frequent contact between Children and another party); (a)(2) (the trial court found that this factor—regarding present and past abuse and the risk of future abuse weighed in favor of Mother; however, the trial court did not accord this factor much weight, as it found that Children are not at risk for abuse with either party); (a)(3) (parental duties performed by each party weighed slightly in favor Mother, but the trial court noted that it had no concerns as to Father's capabilities to perform parental duties); (a)(9) (finding that Mother was "very slightly" more likely to maintain a loving, stable, consistent and nurturing relationship with Children adequate for their emotional needs); (a)(10) (concluding that Mother had a "very slight edge" regarding attendance to Children's daily physical, emotional, developmental, educational, and special needs of Children, with Mother's edge being only to the emotional needs of Children with all other portions of this factor being equal); (a)(13) (level of conflict between the parties factor "slightly" favors Mother due to Father's refusal to acknowledge Stepfather in front of Children). *See* Trial Ct. Op., 2/29/24, at 3-9. The remaining factors were either inapplicable to the instant case or did not favor either party. *See id.* (applying 23 Pa.C.S. §§ 5328(a)(2.1), (5), (6), (7), (8), (11), (12), (14), (15), (16)). We further note that although these were the factors in effect at the time of the trial court's decision, we are aware that effective August 13, 2024, Section 5328(a) was subsequently reordered and amended. *See* 23 Pa.C.S. § 5328 (amended April 15, 2024, P.L. 24, No. 8, § 3, effective in 120 days).

not supported by the record. ***See E.B. v. M.B.***, 3 WDA 2023, 2023 WL 5236119 at *6 (Pa. Super. filed Aug. 15, 2023) (unpublished mem.) (stating that "a custody factor analysis is not a mere tallying of points as to how many factors favored each parent").[5]

When addressing the custody factors in its February 29, 2024 opinion, the trial court noted that Children do not "know a soul" in New Market, Maryland. Trial Ct. Op., 2/29/24, at 6. Addressing relocation, the trial court concluded that relocation would have the potential to have a negative impact on Children—particularly with their educational and social needs. ***Id.*** at 11-12. The trial court recognized that for Children, relocating to Maryland would involve "leaving the friends, teammates, and . . . some of the family circle they have always known." ***Id.*** at 14. Further, the trial court explicitly concluded that, "[t]he educational opportunities are not greater at the proposed location and school district." ***Id.*** The trial court found that the relevant factors weighed "heavily" in favor of Father. ***Id.*** at 12, 14.

Additionally, the trial court emphasized that relocation would provide Mother with a potentially lucrative financial opportunity to pursue a professional position that requires her to work for a certain number of days a week in Tysons Corner, Virginia. Trial Ct. Op., 2/29/24, at 13. Further, the trial court highlighted the fact that Mother, who has remarried, would be living

---

[5] We may cite to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value. ***See*** Pa.R.A.P. 126(b).

with her new husband (Stepfather), in Maryland. *Id.* at 15. The trial court observed that Stepfather's daughters from a previous marriage lived and attended school in Maryland, and that he would not be able to relocate to Pennsylvania to maintain his current custodial arrangement. *Id.* In its opinion, the trial court clarifies that it included this benefit to Stepfather only to assess the impact on Stepfather and his custodial relationship with his children, but not for its impact upon "Mother, Children and . . . on their familial dynamic." *Id.* at 16.

We note that courts are not required to ignore the benefits that relocation may confer upon the relocating party and must instead consider such benefits when making its determination. *See* 23 Pa.C.S. § 5337(h)(6). As we have stated, the paramount concern of custody and relocation cases is the best interest of Children. *See* 23 Pa.C.S. §§ 5328, 5338; *S.S.*, 189 A.3d at 1098; *J.M.*, 164 A.3d at 1264; *Saintz*, 902 A.2d at 512.

We understand very clearly that it is not the role of this Court to reweigh evidence as a pseudo-fact finder in our appellate review, nor is it "this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion." *King*, 889 A.2d at 632 (citation omitted and some formatting altered). *See also D.K.D. v. A.L.C.*, 141 A.3d 566, 579-80 (Pa. Super. 2016) (holding that the trial court abused its

discretion when it granted relocation when the record did not sustain the trial court's consideration of the Section 5337(h) relocation factors).

In the instant case, we find that the trial court's conclusions are unreasonable in light of its sustainable findings of fact. *See C.R.F.*, 45 A.3d at 443. As such, we conclude that the trial court abused its discretion when it found that relocation was in Children's best interest.

Notably, when addressing the relocation factors, the trial court found that relocation "would significantly impact Father's time with [] Children[,]" therefore finding that the first factor weighed "in favor of [Father's] position . . . ." Trial Ct. Op., 2/29/24, at 11 (applying 23 Pa.C.S. § 5337(h)(1)). However, of critical concern to this Court is the trial court's finding that relocation would remove Children from a school and school district in which they are "**thriving**,"[6] and take them away from their friends, teammates, and members of Father's family, which the trial court found to weigh "**clearly**" and "**heavily**" in Father's favor. Trial Ct. Op., 2/29/24, at 5, 11-12, 14 (applying 23 Pa.C.S. §§ 5337(h)(1), (2), (7)) (emphases added). Additionally, the trial court found that there was "ample evidence to show that Downingtown is a better school district than Oakdale in Maryland." *Id.* at 12 (applying 23

---

[6] We note that the language regarding Children "thriving" in the Downingtown Area School District only appears in the trial court's analysis of the custody factors under 23 Pa.C.S. § 5328(a)(4).

Pa.C.S. § 5337(h)(2)).[7] Yet, despite its own analysis, the trial court concluded that the proposed relocation would be in Children's best interest. ***See id.*** at 16.

By comparison, the relocation factors the trial court explicitly found to be in favor of Mother addressed whether there was any established pattern of conduct of either party to promote or thwart a relationship between Children and Mother or Father and whether relocation will enhance the quality of life of Mother. ***See*** Trial Ct. Op., 2/29/24, at 11, 13-14 (applying 23 Pa.C.S. §§ 5337(h)(5), (6)).[8]

For these reasons, we reverse the trial court's February 29, 2024 order awarding Mother primary physical custody and granting her petition to

---

[7] As noted above, the parties requested that the trial court not conduct *in camera* interviews of Children, and the trial court honored the parties' request. ***See*** Trial Ct. Op., 2/29/24, at 2, 7, 12-13 (applying 23 Pa.C.S. §§ 5328(a)(7), 5337(h)(4)).

[8] The trial court's analysis of the remaining five relocation factors either did not find explicitly in favor of either party or did not apply. ***See*** Trial Ct. Op., 2/29/24, at 12-13, 15 (applying 23 Pa.C.S. §§ 5337(h)(3), (4), (8)-(10)).

relocate to New Market, Maryland, with Children.[9]  We remand for the trial court to enter a new custody order consistent with this memorandum.[10]

Order reversed.  Case remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date:  <u>10/09/2024</u>

---

[9] We acknowledge that the trial court determined that it was in Children's best interest to award Mother primary physical custody; however, it did so upon weighing the sixteen custody factors set forth in Section 5328(a) "in conjunction" with the ten relocation factors set forth in Section 5337. **See** Trial Ct. Op., 2/29/24, at 10; **see also S.S.**, 189 A.3d at 1098.

[10] In her brief, Mother argues that Father's second and third issues are moot because Mother, in reliance on the trial court's February 29, 2024 order, completed the relocation with Children to New Market, Maryland.  Mother's Brief at 27-28.  Aside from a citation to this Court's general jurisprudence regarding the mootness doctrine, Mother does not include any authority supporting this position. **Cf. D.K.D. v. A.K.C.**, 141 A.3d 566, 580 (Pa. Super. 2016) (reversing an order granting relocation to Florida after the child had already moved to Florida) (cited by Father's Reply Brief at 7-8).